## No. 106

FERRO MACHINE AND FOUNDRY CO. v. WILLSON AVE. LUMBER CO.

Cuyahoga Court of Appeals,
No. 4090, Dec. 18, 1922

**SUB-CONTRACTOR'S LIEN—(1) Distinction between materials and "equipments"—(2) Distinction immaterial.**

SULLIVAN, J.

Epitomized Opinion

Error to M. C. of Cleveland

A contractor constructed a garage for the machine company and the lumber company furnished the material for the construction. The lumber was furnished at different times and the last lot of lumber was used for building forms for a driveway from the garage to the street. In an attempt by the lumber company to foreclose a mechanics lien under the Sub-contractor's Lien Law (Sec. 831 GC.), the machine company claims the last item of lumber was an "equipment" rather than a "material" and was therefore not the subject of a lien.

(1) A driveway connecting a garage with the street is a necessary adjunct to the garage. Consequently lumber used on the premises and in the construction of such driveway would be a material rather than an equipment.

(2) A lien in favor of a mechanic will extend to all the materials furnished in good faith notwithstanding a portion of such materials be directed to a different purpose.

Attorneys:—Holding, Masten, Duncan & Leckie for Machine Co.; George Palda for Lumber Co.

---

## No. 107

WOOSTER ELECTRIC CO. v. FRANK BURKETT

For full opinion see Akron Daily Legal News, Aug. 18, 1922

Wayne County Court of Appeals
No. 746, July 14, 1922

**PERSONAL INJURY—(1) Instructions to jury—(2) Misconduct of counsel—(3) Exceptions to refusal to charge jury—(4) Negligence in maintaining dangerous electric wires—(5) Independent act of a third person as proximate cause.**

Epitomized Opinion

WASHBURN, P. J.

The Electric Co. maintained a high tension wire along a country highway, said wire being 23 feet above the ground. Burkett was engaged by one Allshouse, a school board member, to assist in repairing a well in the school yard on the same highway. While removing a section of pipe over 20 feet long connection wac accidentally established with the electric wire, Allshouse being killed and Burkett permanently injured. In a suit by Burkett against the Electric Co., Burkett recovered damages and the Electric Co. alleges error.

(1) Answers to interrogations submitted to the jury must be requested, "if they render a general verdict," not if the sequel is that they answer if they "find for the plaintiff" (11436 GC.). Neglect to answer by the jury does not constitute error when the request was in the latter form.

(2) The question of misconduct of counsel is not properly brought into the record by an affidavit filed subsequent to the trial, and made a part of the bill of exceptions.

(3) When requests to charge the jury before argument are refused, exceptions should be taken before argument is begun.

(4) Maintaining a high tension wire along a public highway in such a position that persons acting in a reasonably careful manner may come in contact with it is negligence such that it will render the company maintaining such wires liable for injuries to other persons.

(5) If a condition is negligently maintained which causes an injury by the subsequent independent act of a third person, such condition is the proximate cause of the injury, unless it is shown that the act of the third person would have produced the injury independently of the negligent condition.

Attorneys—L. R. Critchfield and A. D. Metz, for the Electric Co.; Weyggandt & Ross, and Myers & Dinsmore, for Burkett.

---

## PROPOSED SHUT DOWN OF GLASS PLANTS ENJOINED

A very important piece of litigation found its way onto the docket of the Federal District Court at Cleveland last week; one that is likely to take its place among the history-making cases as settling important phases of the controversy going on between employers and employees and determining how far the gouging of the public can be carried on with impunity

It appears that there is an organization calling itself the National Window Glass Manufacturers' Association, and that in order to keep up prices there are sixty-two plants in the association, and the plan of operation is to keep one-half of the plants idle and thus curtail production.

It is claimed that both the employers and workers are in the conspiracy. Sixteen men constituting a joint wage committee, were recently indicted in the matter. The committee was to meet within a few days to fix a scale and do other things to curtail production for 1923. One of General Daugherty's legal assistants has been camping on the trail of the organization for some time and it is claimed that the two-period system under which the factories are kept idle, violates the Sherman anti-trust law. Judge Killetts granted a temporary injunction preventing the alleged conspirators from acting and the preparations are being made for a big legal battle when the hearing on making the injunction permanent is before the court.

---

Supreme Court of Ohio faces 1923 with 112 cases pending. This time last year there were 156.

In the last year the court has disposed of 274 cases, compared with 188 for 1921. There were 230 cases filed in 1922, or twenty-four more than in 1921. There were 426 cases filed on the docket. In 1921 there were 425 of this class.

---

At Akron a total of 6,250 civil suits have been filed in the civil branch of the municipal court in the last year, according to a report completed by V. D. Burris, clerk of the court.

The municipal court came into existence three years ago with the advent of the municipal charter under which the city is being governed at the present time, and replaced all justice of peace courts in the city.

The number of cases filed during the last year exceeded those of any previous year, it was stated.