## RESERVE TRUCKING CO v FAIRCHILD

Ohio Appeals, 9th Dist, Summit Co

No 2253.   Decided June 7, 1933

158

Waters, Andress, Wise, Roetzel & Maxon, Akron, for plaintiff in error.

Herberich, Weick & Powers, Akron, for defendant in error.

WILLIAMS, J (6th Dist) sitting in place of WASHBURN, PJ.

## OPINION

By STEVENS, J.

The terms "wilful" and "wanton" conduct are frequently used in such manner as to indicate that the two are synonymous. Such is not the case, however. ':Wilful" conduct imports the element of intentional, purposeful, or deliberate wrongdoing toward the person injured, after knowledge

of his dangerous situation. (**Payne v Vance, 103 Oh St 59**). "Wanton" conduct imports an entire absence of care for the safety of others, which exhibits indifference to consequences. (**The Higbee Co. v Jackson, 101 Oh St 75, syllabus 3**).

It is conceded by counsel in the instant case that the truck of defendant violated a municipal ordinance of the city of Akron in attempting to make a turn at a place other than at a street intersection, when such turn could not be made without backing said truck. Such violation made the defendant guilty of negligence per se.

**Schell v DuBois, Admr., 94 Oh St 93.**

The record testimony and the exhibits clearly indicate that at the time of the occurrences complained of by plaintiff, the truck of defendant occupied a position approximately at right angles to the curb of Howard Street, about half way up a long, steep hill; that it was raining and foggy; that the tail gate upon said truck was partially down, and unlighted; that because of the position of said truck, the lights thereon were not visible to persons traveling uphill in a northerly direction upon said street; that the night was dark and the truck with its extended end-gate occupied a large part of the width of the street. Further, the testimony of the driver of the truck shows that he and his helper saw the approach of the car of plaintiff when the same was 300 or more feet away from the truck, but that they did nothing to warn plaintiff of the presence of said truck, or the unlighted tail gate thereof.

While the courts have not laid down any hard and fast rule as a measuring stick whereby to determine whether or not certain conduct is "wilful" or "wanton," this court is of the opinion that the evidence in the instant case discloses such conduct of the agents of the defendant as to sufficiently manifest "an entire absence of care for the safety of others which exhibited indifference to consequences," and that the trial court was fully warranted in charging upon wilful and/or wanton conduct, and that the jury was justified in finding on that issue in favor of plaintiff.

We have carefully examined the charge as given, and our conclusion with reference thereto is that the court properly instructed the jury as to the law governing wilful and/or wanton conduct, and that no error intervened by reason of the giving of the charge thereon.

■ Upon the second assignment of error, the claimed error arises out of the cross-examination of the witness William Leek, president of the Reserve Trucking Co.

At the time of his examination by counsel for plaintiff, no motion to require the plaintiff to elect as to which of the two defendants he would pursue had been made; both the Great A. & P. Tea Co. and the Reserve Trucking Co. were parties defendant, and they had filed separate answers, the Tea Co. denying ownership of the truck and agency of the truck driver, and the Trucking Co. admitting ownership of the truck but denying agency of the driver.

The witness Leek, upon cross-examination, denied that the trucks of the Reserve Trucking Co. were used exclusively in the business of the Great A. & P. Tea Co., and for the purpose of impeaching that testimony and as bearing upon the question of joint enterprise between the two defendants, and upon the question of ownership of said truck, the trial court received in evidence, not the insurance policy itself, but the rider protecting the Great A. & P. Tea Co., the provisions of which rider controverted the testimony of the witness Leek, and shed some light upon the relationship existing between the two defendants.

The court, at the time of the reception of that evidence, cautioned the jury that it was received "for the sole purpose of determining the liability of the defendants in the operation of the truck, whether or not either one or the other or both of the defendants exercised control over the operation of the truck, whether they owned the truck, and the sole purpose of this evidence is to throw light on whose truck it was and who exercised control over the operation of the truck."

At the conclusion of plaintiff's testimony, a motion to require plaintiff to elect which of the two defendants he would pursue was interposed by defendants, the court sustained said motion, and plaintiff elected to pursue defendant the Reserve Trucking Co. After the election had been made by plaintiff, the court instructed the jury as follows:

"Now, ladies and gentlemen of the jury, the plaintiff has rested in this case, and the defense is about to put on its evidence, and you are instructed that this case originally started with Richard Fairchild as plaintiff, and there were two defendants, the Great Atlantic & Pacific Tea Co. and the Reserve Trucking Co. You are instructed that now the case is proceeding against the Reserve Trucking Co., and the Great Atlantic & Pacific Tea Co. is not a party defendant.

"Therefore this case will proceed now against the Reserve Trucking Co. only. Now there was some evidence admitted over the objection of the Reserve Trucking Co., on the subject of an insurance policy. You will remember the instruction that I gave you at that time, that that evidence was admitted. Inasmuch as the case is now proceeding against the Reserve Trucking Co. only, you are instructed to disregard entirely and absolutely all evidence on the subject of an insurance policy. You will not consider it at all. You may proceed."

It is urged by counsel for defendant that the admission of this evidence with reference to the insurance rider constituted such prejudicial error that it could not be cured even by the court's later withdrawal of such evidence from the consideration of the jury.

With that contention this court is not in accord.

As bearing upon the question of ownership of said truck and upon the question of joint enterprise, and for the purpose of impeaching the testimony of the witness Leek, the introduction and receipt into evidence of said rider, at the time of its admission, was entirely proper, relevant and competent.

Goz v Tenney, 104 Oh St 500.

Paepke v Stadelman (Mo.), 300 SW 845.

In the latter case the court said:

"1. Defendant's ownership of the car, which, when driven by another, collided with plaintiff's car on a street, is an element of plaintiff's case, and, being denied by the answer, any evidence tending to show it, as that he carried indemnity insurance thereon, is admissible in proof thereof."

"5. If evidence that defendant carried liability insurance is relevant and material, plaintiff cannot be convicted of bad faith in offering it, so as to make his injection thereof into the trial error."

When, by reason of plaintiff's election, the evidence in question was no longer competent, it was withdrawn from the consideration of the jury by the court under entirely appropriate instructions.

"The failure to formally withdraw evidence which was competent when admitted, but which has become incompetent by reason of a change in the case, is not prejudicial when the jury are instructed to disregard it."

2 O. J., "Appeal and Error," §720, "Withdrawal and Striking Out."

We hold that the admission of the evidence concerning the insurance rider was proper, when it was admitted, and for the purpose for which it was admitted, and when a change in the case occurred, and that evidence was no longer competent, its withdrawal from the consideration of the jury under the instructions of the court, as given, did not constitute prejudicial error.

Having arrived at this conclusion, it follows that there was no error in the court's overruling of defendant's motion for mistrial.

■ ■ ■ We have carefully examined and considered the interrogatories propounded, and the answers given thereto, and it is apparent from our examination that counsel for defendant, in propounding said interrogatories, considered the endgate of the truck as a part of the body thereof, while the jury in its answers differentiated between the body and chassis of the truck, and the unlighted open tail gate thereof.

We are unable to conclude from our examination that there exists any inconsistency between the general verdict and the special findings, which would have warranted the trial court in sustaining defendant's motion for judgment non obstante veredicto. On the contrary, we are of the opinion that the special findings and the general verdict are entirely consistent.

The special interrogatories having been propounded by defendant, and having perhaps been answered in a manner not pleasing to counsel for defendant, but nevertheless responsive to the questions themselves, this court is of the opinion that the trial judge had no authority to strike portions of the answers therefrom.

In order for the special findings to be inconsistent with the general verdict, as contemplated by the statute (§11464, GC), "it must appear that the special findings are irreconcilable, in a legal sense, with the general verdict; and to justify the court in setting aside or disregarding the general verdict on the ground that it is inconsistent with such special findings, the conflict must be clear and irreconcilable."

Davis v Turner, 69 Oh St 101, syllabus 3.

We find no such conflict in the instant case, and we further hold that the court did not commit error in refusing to strike portions of the special findings therefrom.

■ It is contended by counsel for defendant that the court erred in refusing to submit to the jury interrogatories Nos. 11, 12 and 17.

As to interrogatories Nos. 11 and 12, we hold that they are indefinite and do not "require answers which establish probative facts, from which an ultimate, material fact may be inferred, as a matter of law." **(Mellon v Weber, 115 Oh St 91).** Hence, their submission was properly refused.

As to No. 17, "this interrogatory does not call for a special finding upon a particular question of fact as contemplated by such statutory provision, but rather for a combined finding of fact and conclusion of law" **(Steel Co. v Ianakis, 93 Oh St 300, at p. 303),** and therefore should not have been submitted by the trial court.

It would not have been error for the court to have refused to give any or all of the interrogatories submitted by counsel for defendant, in the form in which their submission was requested; it will be noted that the request of the defendant for special findings was couched in the following terms:

"The defendant the Reserve Trucking Co., requests the court to instruct the jurors that if they render a general verdict **in favor of the plaintiff,** to specially and separately find upon the following particular questions of fact herewith submitted, each of said findings to be in writing."

**Sec 11463, GC,** provides as follows:

"When either party requests it, the court shall instruct the jurors, if they render a general verdict, specially to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereof. The verdict and finding must be entered on the journal and filed with the clerk."

The statute requires special findings only in the event the jury "render a general verdict," while this request requires a finding only in the event "they render a general verdict in favor of the plaintiff."

That such a request does not come within the purview of the statute has been decided by this court in the case of **Wooster Electric Co. v Burket, 1 Abs 140;** also by the Eighth District Court of Appeals in the case of **Pecsok v Milliken, 36 Oh Ap 543; (9 Abs 270),** and by our Supreme Court in the case of **Gale v Priddy, 66 Oh St 400, syllabus 2.** Consequently, no error was committed by the refusal of the trial court to submit the three interrogatories which were refused.

■ As to this assignment of error, we find no merit therein.

The purport of the affidavit of the juror is "an attempt to impeach the verdict signed by the individual jurors. That this cannot be done has been repeatedly held by this court as shown by the following cases: **Hulet v Barnett, 10 Ohio 459; Holman v Riddle, 8 Oh St 384; Kent v State, 42 Oh St 426,** and **Corrigan v Rockefeller, 67 Oh St 354, 371."**

**Long v Cassiero, 105 Oh St 123, at p. 126** (1922).

Moreover, the counter-affidavit of the juror in question shows, without contradiction, that said injury was forgotten by her at the time of her voir dire examination, and that neither said injury nor the fact that she had, during the trial, driven up the Howard Street hill, had any influence upon her determination of the instant case.

Considering the record as a whole, we find no prejudicial error therein. The judgment of the trial court is therefore affirmed.

FUNK, J, concurs.

## DISSENTING OPINION

By WILLIAMS, J.

The writer regrets that he is unable to agree with the majority, but earnestly feels that if the majority holding is accepted, it will revolutionize the law relating to personal injury. It is held therein that the doctrine of wilful and wanton act, or wilful and wanton negligence, as it is sometimes called, applies to this case. If, under the circumstances of this case, turning a truck around in a block between intersections in violation of a municipal ordinance, and then stopping it and standing still, leaving practically half the street clear for passing traffic, constitutes a wanton and wilful act, or if leaving down a rear endboard on a truck, which has displayed in accordance with the statutory requirement a rear light, to enable the driver to look back for purposes of safety, constitutes a wanton and wilful act, then the prevailing concept of the law of negligence is utterly destroyed. In the judgment of the writer the court committed prejudicial error in submitting that issue to the jury.

It is contended, however, that the two-issue rule applies. There were no interrogatories submitted upon the question as to whether the defendant, the Reserve Trucking Company, was guilty of actionable negligence. An interrogatory was submitted to test the mind of the jury upon the question whether that defendant was or was not guilty of wanton and wilful act, or,

rather, wanton or wilful act, as the question was put, but the court did not submit it to the jury. The court in its charge defined "wanton and/or wilful" act (which included "wanton or wilful" act) and the interrogatory called for a controlling or ultimate fact in the answer, but it is contended that the request to have it given was not properly made and therefore the court, in refusing it, acted according to law. However that may be, we will approach the consideration of the application of the two-issue rule as if no attempt to test the mind of the jury had been made. The two-issue rule may well apply in favor of the plaintiff as well as the defendant in a proper case, for it is a poor rule that does not work both ways. In the instant case, however, there were not two issues upon which plaintiff could base a right of recovery, for the reason that only one issue made on the petition could properly be submitted to the jury, namely, the question whether the defendant was guilty of negligence which was the proximate cause of plaintiff's injury. The application of the two-issue rule, where there are two issues involved, contemplates that there are two issues which may properly be submitted to the jury. If only one issue in reality exists under the law, the two-issue rule cannot be applicable merely because the court injects another issue erroneously and prejudicially into his charge. To hold otherwise would lead to an absurdity.

The jury did answer an interrogatory in which the finding was made that the plaintiff was not guilty of contributory negligence. It may be argued for this reason that the charge of the court in submitting the issue of wilful and wanton act was not prejudicial. The writer thinks that such a contention is not well-founded. Upon the issue whether the defendant trucking company was guilty of negligence which was the proximate cause of plaintiff's injury, the jury might well have found for the defendant; for, even though the defendant trucking company was guilty of negligence in violating an ordinance or otherwise, it was a grave question whether that negligence was the proximate cause of the injury. Thus it became a matter of great moment to the defendant trucking company whether there was a charge upon wilful and wanton negligence. So far as the record discloses, the jury may have based its verdict upon that rather than the other issue made upon the petition.

It might well be inquired whether, in view of the answer to interrogatory number 9, the plaintiff did not violate §12614-3 GC. There are other questions in the case which are passed by.

The writer would not feel so much concerned over the outcome of this proceeding in error were it not for a tragedy which occurred during the trial of the case. The Great Atlantic & Pacific Company, which will be referred to as A. & P., was joined as a co-defendant and upon trial counsel for plaintiff introduced a rider to an insurance policy which was read to the jury and disclosed that the defendant trucking company carried insurance. There is no evidence tending to show that A. & P. and the defendant trucking company were engaged in a joint enterprise or joint adventure and no evidence was introduced tending to show that A. & P. exercised any control over the driver of the truck or had the right of control over him. The injection of A. & P. into the case could have served but one purpose, that of enabling counsel for plaintiff to emphasize the fact that the trucking company carried insurance. The trial court, it is true, instructed the jury not to consider this evidence, but then it must be remembered that, after a saber thrust, the withdrawal of the saber still leaves the wound. In many instances, error of this character may be corrected, but in the instant case there was another thing which reveals the atmosphere in which this case was tried. After the plaintiff had elected to proceed against the defendant trucking company alone, counsel for A. & P. left the court room and the following colloquy took place between Mr. Weick, attorney for the plaintiff, and Mr. Wise, attorney for the insurance company, as appears on page 251 of the record:

"Mr. Wise: I might suggest that Mr. Darmstetter was here as attorney for the Great Atlantic & Pacific Tea Company. I am just explaining why he left the table, they having been dismissed out of the case.

"Mr. Weick: You were also representing them.

"Mr. Wise: Indeed I was not.

"Mr. Weick: You signed your name to their answer as attorney.

"Mr. Wise: It was a joint answer.

"Mr. Weick: There were two separate answers filed.

"Mr. Wise: I don't know as it is any of your business."

It is thus apparent that Mr. Wise was put between the devil and the deep blue sea. On the one hand he would be held up

as an imposter for saying that he did not represent A. & P., or on the other hand be compelled to admit that, though he signed the answers as attorney for the defendants, he in truth was employed and paid by the insurance company. Is this procedure in accord with the high purpose of the trial court? With such a setting, how could the trial result in anything but a large verdict for the plaintiff? If justice has not lost her blindfold, the judgment should be reversed and the cause remanded for a new trial.