In the Matter of EUGENE F. CLAYTON, Petitioner, v BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 1 OF THE TOWNS OF CONKLIN, BINGHAMTON, KIRKWOOD AND VESTAL, Respondent.

Third Department, November 13, 1975

*Bernard F. Ashe (Richard C. Heffern* of counsel), for petitioner.

*Shaw, Esworthy, O'Brien & Crowley (Frank C. Shaw* of counsel), for respondent.

*Per Curiam.* On February 20, 1974, the respondent was given notice of charges against petitioner for insubordination and conduct unbecoming a teacher, based upon physical abuse of students. On February 28, 1974, the respondent found probable cause for the charges and issued a written statement setting forth in detail three separate charges.

The petitioner (a tenured eighth grade music teacher) was charged with using excessive physical force on students, insubordination and conduct unbecoming a teacher because on October 21, 1969 and on December 10, 1973 he applied physical force on students despite specific warnings from his building principal not to hit or otherwise physically discipline students. He was further charged with insubordination and conduct unbecoming a teacher because he wrote a letter to a newspaper which it published and thereafter delayed in answering certain questions of the Superintendent of Schools about the letter, and also because he failed to prepare "permanent lesson plans".

The matter was fully submitted to a hearing panel pursuant to section 3020-a of the Education Law (all statutory references hereinafter are to the Education Law) and the panel specifically found a failure to prove excessive use of force; that the October 21, 1969 incident should be barred by laches; that the administration did not appear to actually require teachers to prepare lesson plans and that the petitioner prepared the same after being specifically directed to do so; that the October 21, 1969 incident might have been conduct unbecoming a teacher, but there was laches in pursuing it and at the time it happened no one thought it very serious; that all charges and specifications should be dismissed. The hearing panel's decision or report contains no factual findings which would be related to credibility and makes no direct reference to the letter to the newspaper and the delay in responding to a superior in regard thereto.

The board in a decision dated August 8, 1974 referred to the transcript of the record and the hearing panel's report and

found the petitioner guilty of all charges upon findings that all of the factual specifications were established. In its decision, the board expressly declined to apply laches to the October 21, 1969 incident upon the ground that the Legislature had specifically provided for a period of five years within which to bring charges pursuant to section 3020-a.

The petitioner raises many issues upon this proceeding. His contentions as to the unconstitutionality of a suspension of duties prior to a hearing and as to the effectiveness of the rules and regulations of the Commissioner of Education relating to the board decision herein (8 NYCRR 82.10 [h], 82.11) were fully considered in his prior appeal to this court *(Hodgkins v Central School Dist. No. 1,* 48 AD2d 302) and will not now be considered again. (See *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65.)

Petitioner's contention that upon this record the respondent could not impose punishment upon charge number one (excessive use of force) is correct. Subdivision 2 of section 3012 controls in this case as to the causes for removal and excessive force is not therein listed. Assuming that by virtue of the mention of charges based upon a crime in subdivision 1 of section 3020-a excessive force might be an allegation of a crime and thus a valid independent charge *(Fordum v Board of Regents of State of N. Y.,* 491 F2d 1281), the record is devoid of substantial evidence that the petitioner committed such a crime. (Cf. Penal Law, § 35.10, subd [1].) However, that does not mean that charge 1 and its specifications could not be relied upon by the respondent to establish the charges of insubordination and conduct unbecoming a teacher.

The respondent had established a policy in regard to discipline which as follows was in effect at the relevant times herein: "It is the Teacher's right and duty to discipline students. The Teacher may use corporal punishment for the purpose of restraining and correcting pupils the same as a parent or a guardian. Corporal punishment must be reasonable in manner and moderate in degree." It was proven that on October 21, 1969 the petitioner had a student in his class who was disruptive. The petitioner administered the punishment of standing in a corner during class and at the conclusion of class as petitioner was attempting to remonstrate with him, the boy was insubordinate. In response to the insubordination, the teacher slapped the boy with his fingers and a scuffle ensued which at one point had the petitioner hitting the boy

on his back with his fists. The petitioner testified that following the slap by him, the boy hit him in the chest about three times and that his actions thereafter were to subdue the boy and keep the boy from injuring him further.

The respondent offered as evidence a written memorandum by the petitioner's building principal which recited that the boy became belligerent whereupon the petitioner forcefully caused the boy to fall to the floor and that the petitioner had not denied the charge. The principal testified that he could "not recall" whether or not the petitioner had told him at the time that the boy had hit him with his fist prior to the petitioner's subsequent fighting. Lastly, it should be noted that the petitioner testified the boy was about five feet and nine inches tall and weighed about 210 pounds.

The record establishes that the administration had advised teachers generally by way of a teacher's handbook that they should not apply corporal punishment to students but instead should refer such needy students to administration officers or guidance officers for discipline. However, it was conceded at the hearing that the handbook had not been approved by the respondent and, further, it was admitted that the book and its instruction on discipline were advisory only.

The record also establishes that in 1963 and 1967 the building principal had specifically instructed the petitioner that he was not to hit students. Following the 1969 incident the petitioner was again given such an instruction. The record, however, contains no evidence that the respondent had ever delegated authority to the principal to revoke its specific policy directives as quoted hereinabove which grant the right of corporal punishment to teachers and make it a duty of teachers to discipline students.

Upon the present record, the teacher's handbook and the specific direction of the petitioner's principal were not established as valid directives, and the invalidity thereof is demonstrated by the fact that the administrative people never charged the petitioner with insubordination because of his physical contact with students.

Accordingly, the board's finding that this specification (No. 3 of Charge 1) constituted guilt of insubordination as charged in Charge No. 2 is not supported by substantial evidence. The incident of 1969 will be further considered herein as to conduct unbecoming a teacher.

Specification 6 of Charge No. 1 and as incorporated in the

charge of insubordination and conduct unbecoming a teacher relates to a physical contact between the petitioner and a student on December 10, 1973. A member of the guidance office staff testified that on the said date he observed the petitioner chasing a student in an open area and, as he was about 10 feet from them, the petitioner caught the student by the arm and kept him from pulling away. From what he saw, the petitioner was simply detaining the boy. At his request, the petitioner released the boy and the boy then accompanied the guidance officer to his office. While the record contains some slight inference that without the guidance officer's intervention, the petitioner *might* have been going to strike the boy, there is not a scintilla of probative evidence to that effect. The sole evidence in this record is that the boy had disobeyed an instruction of the petitioner and was trying to escape detention when the petitioner apprehended him. The respondent's finding that this incident (Specification No. 6 of Charge No. 1) was either the hitting or striking of a student or insubordination is without any support of substantial evidence. This incident will be further considered herein as to conduct unbecoming a teacher.

Specification No. 7 of Charge No. 2 recites that by a letter of October 27, 1969 the petitioner was instructed to prepare "permanent lesson plans for a substitute" and on this basis he has been found guilty of insubordination and conduct unbecoming a teacher. The petitioner's building principal testified that on October 27, 1969 he instructed the petitioner to prepare a permanent lesson plan. He then testified that the policy was for every teacher to have a "weekly" lesson plan. On April 18, 1973 the petitioner told the principal that he had not been preparing "weekly" lesson plans for three years, but that he would do so from then on. The principal explained that there is a difference between a "permanent" lesson plan and weekly or daily plans. Then the principal conceded that when he questioned petitioner in 1973, it was not as to "permanent" lesson plans and that the petitioner might well have had such a plan.

The petitioner testified that although he had not always prepared weekly or daily lesson plans prior to the direction of his principal in April of 1973, he had at all times maintained a permanent lesson plan since the 1969 direction of his principal. The hearing panel found that the record did not establish that the defendant failed to carry out requests by his

principal to prepare lesson plans. The respondent found he was guilty as described in Specification No. 7. The record establishes that the petitioner had complied with the 1969 order of his principal and the additional matter in the record relating to weekly or daily lesson plans was not encompassed within the charges and cannot be utilized as a basis for action in this proceeding. The record contains no substantive evidence which would support a finding of insubordination in regard to lesson plans and this specification could not rationally support a conclusion of conduct unbecoming a teacher.

The remaining Specification No. 8 in these charges relates to a letter written by the petitioner to a local newspaper and which was printed therein. The letter was published November 29, 1973 and criticized a Mr. Gordon Pratt (the vice-president of the respondent and the same man that initiated charges against the petitioner) in regard to allegations that children were being abused in public schools and went on to state that, in fact, pupils in the schools were abusing teachers. Specification No. 8 goes on to recite that the Superintendent of Schools requested information in a letter dated December 7, 1973 as to specific instances of abuse of teachers by students. The record establishes that in the December 7, 1973 letter the information was not requested to be furnished by any certain time. On January 10, 1974 the Superintendent of Schools wrote another letter to petitioner wherein he concluded that since the petitioner had not yet responded to his request for information, the original allegation of abuse of teachers by students was irresponsible. The petitioner, on January 12, 1974, responded and gave details of recent examples of abuse to himself by students.

Specification No 8 is exceedingly vague because it expressly recites that it is not intended to charge the petitioner with any "wrong doing" as to the writing or publishing of the letter. The Superintendent of Schools testified that he was merely attempting to investigate instances of abuse by students so he could correct the situation as was his duty. He then conceded that the petitioner did furnish information as requested, and that he did not request any further details. As a matter of fact, the record does not contain substantial evidence which would sustain the board's finding that the proof as to Specification No. 8 constituted proof of insubordination or conduct unbecoming a teacher. As a matter of law, this particular specification would constitute an indirect at-

tempt to abridge the petitioner's freedom of speech by the respondent. (See *Matter of Puentes v Board of Educ. of Union Free School Dist. No. 21 of Town of Bethpage,* 24 NY2d 996, 998, 999.) From the testimony of the Superintendent of Schools it is apparent that he was already aware that the school files contained many instances of abusive conduct by pupils toward teachers.

The remaining issue is whether or not the record contains substantial evidence to support the finding of the board that the petitioner engaged in conduct unbecoming a teacher.

As noted hereinabove, the record does not contain any proof that the petitioner's conduct in regard to the letter published on November 29, 1973 and the subsequent request of the Superintendent of Schools would constitute insubordination. The record is devoid of any facts which would reasonably infer or suggest that his conduct in regard to the information requested by the Superintendent of Schools was a form of misconduct. The specification itself recited that the respondent was not charging any wrongdoing in regard to the fact that the petitioner actually wrote the letter published on November 29, 1973. Accordingly, the respondent's finding that this specification would support a finding of misconduct is erroneous.

As noted hereinabove, Specification No. 7 which related to the filing or preparation of lesson plans was not established in the record as being any form of insubordination. The record does contain some evidence which was not charged in the specifications which would indicate that it was the general duty of the petitioner and all teachers to prepare daily or weekly lesson plans. While that evidence might be minimal proof of some neglect of duty, it does not in any way constitute proof of misconduct, and the respondent erred in finding that Specification No. 7 would support a conclusion of misconduct.

Specification No. 6 of the charges, as discussed hereinabove, related to the fact that the petitioner chased and physically restrained a student who was apparently seeking to avoid a detention. The record does not disclose any facts which would reasonably infer that the chase or apprehension was anything other than the duty of the petitioner or that, under the circumstances then prevailing, it would be misconduct. Accordingly, the board erred in finding that this particular specification would support a finding of misconduct.

Specification No. 3 which relates to the use of force by the petitioner upon a student on October 21, 1969 is fully discussed hereinabove. While the record lacked substantial evidence which would establish that the particular conduct by the petitioner was a crime or constituted insubordination, it could be considered as conduct unbecoming a teacher because it had obviously developed into a situation resembling a classroom brawl. Nevertheless, the record does not establish that the petitioner did not have reason to initially engage in the fisticuffs in order to protect himself. While it appears that the respondent rejected, upon credibility, the testimony of the petitioner as to the necessity for self-defense, the only remaining evidence is that the fisticuffs started because of the belligerence of the student. Upon the present record, there is circumstantial evidence that the force applied by the petitioner was excessive, however, there is equally strong circumstantial evidence that the application of force by the petitioner was entirely necessary. It is notable that the record does not establish that the administration considered the 1969 incident was of such a nature as to constitute possible misconduct at the time it occurred. As noted by the hearing panel, the 1969 incident was quite stale as of the time these charges were preferred and, in fact, had occurred well over four years before these charges were instituted. The board expressly rejected the conclusion of the hearing panel that the 1969 incident was barred by laches and concluded that pursuant to subdivision 1 of section 3020-a incidents which had occurred within five years of the institution of charges could be relied upon to support a finding of misconduct.

Subdivision 1 of section 3020-a as applicable to the question of laches provides in part as follows: "Except as provided in subdivision eight of section two thousand five hundred seventy-three of this law, no charges under this section shall be brought more than five years after the occurrence of the alleged incompetency or misconduct, except when the charge is of misconduct constituting a crime when committed." Subdivision 8 of section 2573, as excepted from the five-year provision, relates to charges against teachers in city school districts and provides that charges of misconduct shall not be brought more than *three* years after the occurrence of the misconduct except in cases of a crime. While the present proceedings are brought pursuant to section 3012 which governs this particular school district and accordingly section 2573 is inapplicable,

it is evident that a construction of the time limitation contained in subdivision 1 of section 3020-a which would make the three-year limitation available only to teachers in city school districts is discriminatory. The petitioner throughout these proceedings has not objected to the 1969 incident as being excluded as a matter of limitations within the Education Law, nevertheless, it has been persistently contended on his behalf that as a matter of "laches" (staleness) the incident should be excluded.

There is no apparent reason for limiting charges of teachers of city school districts as to a three-year period and not imposing the same limitation in regard to teachers of large central school districts. Subdivision 8 of section 2573 expressly relates itself to charges brought pursuant to that section but the pertinent language of subdivision 1 of section 3020-a is not upon its face concerned with any particular section pursuant to which charges might be filed and is simply a time limitation. Considering the penal nature of these proceedings and the statutes which permit the revocation of tenure and discharge of teachers for specified reasons, the limiting language of section 3020-a should be strictly construed. (McKinney's Cons Laws of NY, Book 1, Statutes, § 271.) Given such a strict construction, a limitation of time as affected by the importation in subdivision 1 of section 3020-a of subdivision 8 of section 2573 is, in fact, three years from the date the alleged incident occurred except when the charge constituted a crime when committed. Under this construction, the board's rejection of the petitioner's claim of laches or staleness was erroneous as a matter of law and the 1969 incident may not be considered substantial evidence of conduct unbecoming a teacher.

Since the record lacks substantial evidence to support a finding that any of the charges against the petitioner were sustained, the remainder of the petitioner's contentions upon this proceeding are not reached or considered.

The determination should be annulled, with costs, and the matter remitted to respondent with directions to reinstate petitioner in his position as a teacher with appropriate back salary to the date of reinstatement less a credit to respondent for all earnings which petitioner may have had from other employment during his period of suspension.

HERLIHY, P. J., KANE, MAIN and LARKIN, JJ., concur; GREENBLOTT, J., not taking part.

Determination annulled, with costs, and matter remitted to respondent with directions to reinstate petitioner in his position as a teacher with appropriate back salary to the date of reinstatement less a credit to respondent for all earnings which petitioner may have had from other employment during his period of suspension.