In the Matter of WILLIAM D. HARRIS, Respondent-Appellant, v MECHANICVILLE CENTRAL SCHOOL DISTRICT, Appellant-Respondent.

Third Department, May 12, 1977

*Nolan & Hayner (Thomas D. Nolan* of counsel), for appellant-respondent.

*Bernard F. Ashe (Ivor R. Moskowitz* and *Richard E. Casagrande* of counsel), for respondent-appellant.

MAIN, J. Petitioner, William D. Harris, was employed as an English teacher by the Mechanicville Central School District for some nine years, having commenced his duties with the school in 1966. In the course of teaching his sophomore English class, he had for several years made use of the novel *Catcher in the Rye (Catcher)* and did so during the fall semester of 1973. Early in that semester the school principal, William Raven, received numerous complaints from concerned parents about the manner and methods of teaching *Catcher* that were employed by the petitioner. In response to the

community concern, Mr. Kearns, the school superintendent, held a meeting on October 5, 1973 and in attendance besides Mr. Kearns were William Raven, Paula Farny, as a teacher association representative, and petitioner. It appears that as a result of that meeting the petitioner agreed that he would no longer use the subject novel and that he would find a substitute therefor. Superintendent Kearns shortly thereafter circulated a memorandum relative to the meeting which referred to the agreement or understanding and petitioner admittedly received a copy and made no challenge to its contents. In the fall of 1974, without consent or any discussion with school officials, petitioner reintroduced *Catcher* into his English class curriculum. This fact came to the attention of Mr. Raven on November 25 and he immediately summoned petitioner to his office. As might be expected, the meeting was less than harmonious and was abruptly terminated by the petitioner who, despite directives that he remain, walked out. Moreover, in the presence of others, he ignored requests that he return.

When apprised of the incident, the Mechanicville Central School District Board met and determined that there was probable cause to prefer charges and it suspended the petitioner, pending a hearing. In brief, the first charge involved the abortive November 25 meeting and charged the petitioner with insubordination for his refusal to remain at and later his refusal to return to the meeting. The second charge alleged that petitioner was guilty of insubordination because he violated the terms of the understanding or agreement arrived at during the October 5, 1973 meeting. Pursuant to section 3020-a of the Education Law, a hearing was held by a three-member panel. The panel divided in its recommendations as to the charges, voting to dismiss the first charge and sustain the second charge by a two to one vote in each instance. The board, not bound by the panel decision (see *Matter of Caravello v Board of Educ., Norwich City School Dist.,* 48 AD2d 967), sustained both charges and dismissed the petitioner from his position. Petitioner then instituted the present proceeding, seeking to have the determination of the respondent board annulled. Special Term sustained the board's finding as to the first charge but annulled its determination as to the second and remanded the matter to the board "For further consideration of a penalty provided for by statute short of dismissal". Respondent board appeals and the petitioner cross-appeals.

In reference to the first charge, we agree with Special Term.

Petitioner abruptly terminated the meeting in the face of a reasonable direction that he remain and later, in the presence of other teachers, again disobeyed a reasonable direction that he return to the principal's office. Significantly, he so conducted himself, knowing, as shown in the record, that such conduct might well constitute insubordination. Since the record discloses that there was substantial evidence to support the factual determinations of the board, its findings must be upheld (*Matter of Bott v Board of Educ. of Deposit Cent. School Dist.*, 51 AD2d 81, mod 41 NY2d 265).

Turning to the second charge, we again conclude that the board's determination should be affirmed. In so concluding, we hasten to point out that we do not disagree in any material aspect with Special Term's well-reasoned and well-documented statement on the First Amendment issue and upon this record we agree that the school authorities, in all likelihood, could not have been sustained had they charged petitioner for his use of *Catcher* and his teaching methods. However, the charge here is for insubordination, in that petitioner entered into an agreement of significance and later deliberately and deceitfully broke it. It matters not that he was "requested", and "asked" or "told" during the October 5 meeting to find a substitute. What does matter and, in our view, is determinative of the issue, is that petitioner decided to and did enter into an understanding which was later summarized and reduced to writing and furnished to petitioner. There is no evidence to indicate that he was threatened or coerced nor does the petitioner so suggest. He could have chosen, so to speak, to draw the line by defending his subject and methods as a valid exercise of academic freedom which is protected by the First Amendment (*Mailloux v Kiley*, 323 F Supp 1387, affd 448 F2d 1242) and, if he had done so, we would have then been faced with the First Amendment issue. Instead, as the record emphatically discloses, he agreed to a course of conduct that was relied upon by the school authorities and provided a basis from which they could still the concerns of interested parents. Hence, it was not an agreement that was to be taken lightly and the petitioner's belated reasons for not taking issue with the contents of the memorandum strain credulity. Substantial evidence supports the board's interpretation of what transpired at the October 5 meeting and its finding of insubordination.

The severity of any penalty imposed is usually a subject of

234

broad discussion and good minds and reasonable men ofttimes disagree. However, discipline in schools, particularly as of now, is a matter of public concern and the board of education should be given latitude in determining the penalty to be imposed *(Matter of Hatta v Board of Educ., Union Endicott Cent. School Dist.,* 57 AD2d 1005; see, also, *Matter of Ahsaf v Nyquist,* 37 NY2d 182; *Matter of Pell v Board of Educ. of Union Free School Dist.,* 34 NY2d 222, 223; *Matter of Bott v Board of Educ. of Deposit Cent. School Dist., supra; Matter of Clayton v Board of Educ. of Cent. School Dist. No. 1,* 49 AD2d 343, mod 41 NY2d 966).

The judgment should be modified, on the law and the facts, without costs, by reversing so much thereof as dismissed the second charge and modified the penalty imposed, and, as so modified, affirmed.

GREENBLOTT, J. (dissenting). I dissent and vote to affirm on the opinion of GRAVES, J., at Special Term.

KOREMAN, P. J., KANE and HERLIHY, JJ., concur; GREEN-BLOTT, J., dissents and votes to affirm on opinion of GRAVES, J., at Special Term.

Judgment modified, on the law and the facts, without costs, by reversing so much thereof as dismisses the second charge and modifies the penalty imposed, and, as so modified, affirmed.