■ In the Matter of JOAN LA ROCCA, Petitioner, v BOARD OF EDUCATION OF THE RYE CITY SCHOOL DISTRICT, Respondent.—Proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the respondent Board of Education of the Rye City School District, which, after a hearing, dismissed the petitioner from her position as a teacher. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. Petitioner, a tenured teacher of art in the Rye Senior High School, was charged by her principal and the Superintendent of the Rye City School District with insubordination, neglect of duty and inefficiency. The board of education determined that there was probable cause to credit the charges and thereafter petitioner was served with a notice of charges pursuant to section 3020-a of the Education Law. There were four charges, the first three of which charged, in essence, that petitioner, from September, 1972 to the date of the notice, had engaged in proselytization at the Rye Senior High School for a religious organization known as the Anointed Music & Publishing Company (Tampco) led by Brother Julius. The fourth charge was that petitioner had disobeyed the direction of her principal, given her at the end of the 1973-1974 academic year, to cease engaging in the proselytizing activities specified in the first three charges. The hearing held between May 22, 1975 and June 23, 1976, resulted in a transcript totaling more than 3,300 pages, in addition to more than 60 exhibits. The hearing panel ruled that petitioner had committed the acts of proselytization listed in Charges Nos. 1, 2 and 3 during the period from September, 1972 through January 30, 1975. As to the fourth charge, insubordination, the panel found that the school district had not sustained its burden of proof. Two of the panel members recommended that petitioner be suspended without pay for the

balance of the 1976-1977 school year and for the entire 1977-1978 school year. The third panel member recommended that the petitioner's employment with the school district be terminated. The board reviewed the entire record and, in its determination, set forth at some length the basis in the evidence for its acceptance of the hearing panel's findings of guilt on the charges of proselytization and concluded, again with a full explanation of its reasons therefor, that the petitioner's services should be terminated. Petitioner initiated the instant CPLR article 78 proceeding to review the board's determination. We confirm the determination based upon our review of the record, which shows that there is substantial evidence to sustain the findings that petitioner, during the period from September, 1972 to January 30, 1975, proselytized students to attend meetings of Tampco in Meriden, Connecticut, and Rye, New York, offered students transportation to those meetings, encouraged students to recruit for Tampco, used classroom facilities during school time to preach and encourage student acceptance of the religious beliefs of Tampco and Brother Julius and, during school hours and on school property, encouraged students to study the Bible and to adopt therefrom the beliefs of Tampco and Brother Julius. There is also substantial evidence to sustain the further findings of the board that petitioner improperly used her influence and authority as a teacher to recruit students for Tampco and as followers of Brother Julius and to preach their precepts and beliefs under the guise of offering students guidance and assistance in dealing with their school, family and personal problems. The evidence shows that in so doing, petitioner encouraged students interested in her religion to disregard their parents' wishes and to lie to them about their involvement in her religious group. Finally, there is undisputed evidence to sustain the third charge that petitioner placed herself in situations which suggested that the public high school in which she taught was being used for proselytization of religious beliefs in violation of the constitutional mandate of separation of church and State by using her office for a prayer session during school hours and, also during school hours, repeatedly trying to induce students to become members of Tampco and to adopt its religious beliefs. Such conduct on petitioner's part was clearly in violation of the establishment of religion clause of the First Amendment of the Federal Constitution and section 3 of article XI of our State Constitution, which prohibits the use of State property in aid or maintenance of any school in which any denominational tenet is taught (see *McCollum v Board of Educ.*, 333 US 203, 216-217; *Judd v Board of Educ.*, 278 NY 200). Nor is the penalty of dismissal imposed by the respondent so disproportionate to the offense as to be shocking to one's sense of fairness, especially in the light of the fact that the petitioner, in her testimony before the hearing panel, stated that if she were to return to teaching she would not feel required to abide by the directive she had been given by her school superiors to cease her proselytizing activities in school and that if, based on her religion, she believed something to be true, she would feel free to express that belief regardless of where she would be or to whom she was speaking (see *Matter of Pell v Board of Educ.*, 34 NY2d 222, 233; *Matter of Harris v Mechanicville Cent. School Dist.*, 57 AD2d 231, 233-234; *Matter of Hatta v Board of Educ.*, 57 AD2d 1005). Martuscello, J. P., Latham, Damiani and Rabin, JJ., concur.