Malgorzata JUNG–LEONCZYNSKA,
Appellant (Plaintiff),

v.

Matthias STEUP, Appellee (Defendant).

Matthias STEUP, Appellant
(Defendant),

v.

Malgorzata JUNG–LEONCZYNSKA,
Appellee (Plaintiff).

Nos. 90–144, 90–145.

Supreme Court of Wyoming.

Dec. 28, 1990.

David G. Lewis of Brown & Drew, Casper, for appellant in No. 90–144 and appellee in No. 90–145.

Steven R. Helling, Bruce Willoughby and Rex O. Arney of Murane & Bostwick, Casper, for appellant in No. 90–145 and appellee in No. 90–144.   .

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

We visit this case for a second time. As in the first appeal, the primary issue to be addressed is the propriety of the grant of a motion for summary judgment.

We will, once again, reverse the district court's entry of summary judgment.

In the first appeal, we determined that the issue of whether a public employee was acting within the scope of his *duties* under W.S. 1–39–104(a) (June 1988 Repl.) when he allegedly engaged in tortious conduct, was a question of fact for the trier of fact and not one for the court in the context of a motion for summary judgment. *Jung–Leonczynska v. Steup*, 782 P.2d 578 (Wyo. 1989)[1]. We also noted that Professor Matthias Steup (Steup) moved for summary judgment. The district court granted this motion, finding as a matter of law that Steup was a public employee acting within

---

1. Rather than repeat the salient facts set out in our previous opinion in the text above, they are set out here for the convenience of the reader:

    Malgorzata Jung–Leonczynska (Leonczynska) filed an action against Professor Matthias Steup (Steup) seeking damages because of an incident which occurred at 1:00 p.m. on No-

vember 13, 1987, in a University of Wyoming classroom during an independent study course being taught by Steup as a faculty member and attended by Leonczynska as a student. According to Leonczynska's complaint, Steup jumped up from his seat and ran four to five yards to where she was sitting.

the scope of his duties as defined in W.S. 1–39–103(a)(v). The trial court concluded that the provisions of the Wyoming Governmental Claims Act (GCA) applied; no statutory exception to the grant of immunity existed; Malgorzata Jung–Leonczynska's (Leonczynska) complaint failed to allege she had filed a claim under the GCA as required by statute, resulting in a lack of subject matter jurisdiction in the trial court; and Steup was immune from liability for his conduct.

All the peripheral issues were decided in favor of Leonczynska and we then addressed the principal issue of the propriety of the summary judgment itself. In summary, we held in *Jung–Leonczynska* that Steup's affidavit did not state facts from which one could infer that he was acting within the scope of his duties. It alleged he was acting within the scope of his employment, but *not within the scope of his duties*. In addition, Steup denied in his answer that he had engaged in the conduct alleged at all. *Jung–Leonczynska*, 782 P.2d at 582. Thus, because Steup was being sued in his individual capacity, he failed in his obligation to demonstrate in the materials appended to his motion for summary judgment that the conduct upon which his liability allegedly rested, consisted of duties which his employing "governmental entity requests, requires or authorizes a public employee to perform * * * ." W.S. 1–39–103(a)(v). *Matthews v. Department of Agriculture*, 719 P.2d 216, 220 (Wyo.1986). In conclusion, we held that questions for the trier of fact exist about whether Steup acted in the way Leonczynska alleged, and, if he did, whether he was, at that time, acting within the scope of his duties. Thus, the case was remanded to the district court for further proceedings on Leonczynska's claims of assault, battery, and intentional infliction of emotional

harm. *See Jung–Leonczynska*, 782 P.2d at 581–83.

Both sides have taken appeals in this case. In Case No. 90–144, Leonczynska raises these issues:

1. Whether there was no genuine issue of material fact presented to the court below to show that the appellee [Steup] had assaulted, battered, or intentionally inflicted emotional harm upon the appellant [Leonczynska].

2. Whether there was an issue of material fact presented to the trial court to show that at the time of the alleged intentional torts, appellee [Steup] was acting within the scope of his duties so as to garb him with protective immunity under the Wyoming Governmental Claims Act, W.S. § 1–39–104(a).

In response to these claims, Steup merely asks whether the district court erred in granting the summary judgment.

In Case No. 90–145, Steup poses these questions:

1. Was the Motion to Reconsider filed on behalf of Appellee [Leonczynska] herein a nullity in light of the fact that it was not signed by the pro se Appellee (plaintiff below) or an attorney?

2. Is it proper for a pro se party's husband, who is not a licensed attorney, to appear and argue on behalf of a party?

3. Was it proper for the District Court to grant Appellee's [Leonczynska's] Motion to Reconsider, in light of the fact that it was not signed by the Appellee or an attorney, the motion was not argued by Appellee or an attorney, there were no legal grounds shown for the granting of such a motion, and Appellee did not supply any supporting facts that meritorious defenses existed to the underlying summary judgment which the Appellee

---

As he came toward her he was angry and yelling; he shook his fist in front of her face; and pounded her belongings on the table, which belongings were in her immediate possession and connected with her body. In her complaint, Leonczynska alleged that Steup's

intention was to create fear and apprehension of immediate bodily contact by him. She sought damages on the alternative theories of assault, battery, intentional infliction of emotional harm, and duress and undue influence.

was asking the District Court to reconsider?[2]

In addition to these claims of error, Steup asserts that Leonczynska's appeal in Case No. 90–144 and the necessity of Steup's cross-appeal in Case No. 90–145 are both lacking in merit and he should receive costs and penalties under W.R.A.P. 10.05 for both the appeal and the cross-appeal.

In answer to these issues, Leonczynska maintains that the actions of her husband on her behalf were done as her attorney in fact and were proper and, to the extent any of the trial court's rulings on husband's participation in the proceedings on behalf of his wife were erroneous, they were, at most, harmless error which did not prejudice Steup. In response to the W.R.A.P. 10.05 claim, Leonczynska argues that her appeal clearly is not lacking in merit. The Wyoming Supreme Court reversed the first summary judgment and Steup had added nothing new to the record which would permit the court to affirm this time (thus, the appeal could not be meritless). Besides, her argument continues, Steup is the appellant in the cross-appeal and there is no provision for an award of damages to an appellant in W.R.A.P. 10.05.

After our remand of the first case to the district court, Steup filed a second motion for summary judgment. In addition to the material filed in the original proceedings, that motion was supported by these two affidavits:

### Affidavit of Matthias Steup

1. I was a former visiting assistant professor in the Department of Philosophy at the University of Wyoming, and was so for the school years of 1987–1988 and 1988–1989.

2. As a visiting assistant professor, I was employed by and paid by the University of Wyoming.

3. As a part of my job with the University of Wyoming, I was required to teach Philosophy courses.

4. On November 13, 1987, I was acting in my capacity as a University instructor, at the time Malgorzata Jung–Leonczynska has alleged that I assaulted, battered and inflicted mental distress upon her. At the time of the alleged incident, which occurred in a classroom at Hoyt Hall, on the University of Wyoming Campus, in Laramie, Wyoming, I was meeting with the plaintiff and her husband concerning an independent study project that she and her husband were working on. The meeting was set up to discuss a topic for a paper they were to write.

5. Several weeks before this meeting, I had given the plaintiff, and her husband, various readings which I thought would help them in choosing a topic for their paper. During our meeting on November 13, 1987, the plaintiff asked me to give her and her husband a lecture summarizing all of their readings. I said that that was not my job, and that the purpose of the meeting was to discuss with them the readings that they had done so that they could choose a topic for their paper. The plaintiff got upset because I declined to summarize the readings.

6. Thereafter, a discussion was had concerning the meaning of "belief," "true

2. The motion to reconsider was filed because Leonczynska claimed not to have received notice of the first hearing. She presented an affidavit to the district court signed by the Laramie, Wyoming, postmaster, establishing that the post office had failed to adhere to Leonczynska's directions for first holding and then forwarding her mail. Thus, through this error on the part of the post office she did not receive notice of the first hearing. There was no evidence presented to contradict her claim. Because of this, she asked for, and was granted, a hearing on her motion to reconsider the district court's grant of the motion for summary judgment. At the time of the second hearing Leonczynska was in Poland attending to matters of family illness and a death. Therefore her husband, Boguslaw Leonczynska, appeared on his wife's behalf as her agent. The district court permitted the proceedings to go forward over Steup's objection and, at the conclusion of those proceedings, again entered summary judgment in favor of Steup.

belief," and "justified true belief." In the topic of knowledge, "justified true belief" is often used as a definition of knowledge. The plaintiff asked a question, but the question was unclear, and I did not understand what she was asking. At that point, the plaintiff falsely accused me of deliberately not understanding her. Prior to November 13, 1987, she had made that same false accusation. I attempted to tell her that she had no reason to make that accusation, and that the study project would have to be discontinued unless she stopped accusing me. She then began to constantly interrupt me and would not let me talk. I told her she would have to stop interrupting me. I told her she would have to give me the courtesy of letting me finish my sentences. She refused to do so and continued interrupting me. She would not let me speak. I walked over to the table that the plaintiff was sitting at and, when she continued to interrupt me, I pounded my fist in an effort to get her to listen to me. I at no time hit her or any of her belongings. I was at no time threatening the plaintiff, nor did I try to put her in fear. I merely tried to tell her that her accusation was unjustified, and that should allow me to finish my sentences.

7. After pounding my fist, there was a brief discussion after which I went back, collected my materials, and left the classroom.

### Affidavit of Oliver Walters

1. I am the acting Dean of the College of Arts and Sciences at the University of Wyoming. The Philosophy Department is in the College of Arts and Sciences.

2. As the acting Dean, I am familiar with the University of Wyoming rules and regulations.

3. When Matthias Steup was hired as a visiting assistant professor, as part of his job with the University of Wyoming, he was hired to teach classes in philosophy.

Although I was not the acting Dean at the time Professor Steup was hired (the former Dean is no longer at the University), I know that while teaching, he was requested, required and authorized by the University to use reasonable means to control the conduct of his students in the classroom. This is standard for all professors at the University, and has been for many years.

4. Attached hereto, as Exhibit "B-1," is a true and correct copy of the University Regulation 29, dated August 12, 1970, and the subsequent University Regulation 29 Change 1, dated August 11, 1980. These regulations were in effect during the 1987–1988 school year at the University of Wyoming. I have compared Exhibit "B-1" with the actual regulation, and the attached Exhibit "B-1" is a true and correct copy of the same.

The pertinent sections of the University regulations attached to Dean Oliver Walter's affidavit are these:

II. *General Conduct*

a. All members of the University community share a common and heavy responsibility to maintain a climate suitable to a community of scholars and to refrain from conduct which obstructs the work of the University, interferes with the lawful exercise of rights by other persons, endangers the safety and security of other persons or their property, prevents the proper use of the facilities of the University, or impairs the maintenance of that kind of an environment which is essential to the operation of an institution of higher learning.

b. The University has a duty and the corollary disciplinary powers to protect its educational purposes through the regulation of the use of the facilities and through the establishment of standards of scholarship and conduct for the students who attend the University. Disciplinary proceedings should play a role substantially secondary to example, counseling, guidance and admonition. When the preferred means fail to resolve problems of student conduct, proper procedural safeguards should be observed to

protect the student from the unfair imposition of serious penalties for violation of the University rules.

c. The University shall strive to assure that all requirements, standards, policies, and regulations that are considered essential to the University's educational mission and which vitally affect students in general are clarified and published or otherwise made known to the affected persons.

\* \* \* \* \* \*

III. *The Classroom.* The instructor in the classroom and in conference should encourage relevant discussion, inquiry, and expression. Student performance should be evaluated solely on an academic basis, not on opinions or conduct unrelated to academic matters.

a. Students shall be free to take reasoned exception to data or views offered in any course of study and to reserve judgment about matters of opinion, but they shall be responsible for learning the content of any course of study for which they are enrolled.

b. Students shall have protection through orderly procedures against prejudiced or capricious academic evaluation. At the same time, they shall be responsible for maintaining standards of academic performance established for each course in which they are enrolled.

c. The student has a right to expect a competent and conscientious effort from his instructor including a statement of purpose and scope of the course and expectations of student performance. Correspondingly, the instructor has the right and responsibility to fail students who do not satisfy the obligations of the course.

d. A student has obligations as well as rights in the classroom. He has no right to impinge on the instructor's freedom to teach or of the right of other students to learn. The instructor shall establish reasonable standards of conduct for each class which should be made known at the outset of the class, and the instructor may, through orderly procedures, dismiss any student who violates such standards.

We cannot find any provision of Change 1 to these regulations which is pertinent to this action, although the substance of that question must be reserved for the further proceedings which we shall direct on remand.

There are additional factual materials in the record of this case, including Leonczynska's deposition, her affidavit, her husband's affidavit, and other materials which she presented in behalf of her case. We will not discuss these in detail, but rather merely acknowledge their presence in the record, because they only serve to further bolster Leonczynska's position and do not serve in any way to undermine our decision to reverse the grant of summary judgment.

In our first opinion in this case, we determined that questions of material fact were raised in Leonczynska's complaint which precluded the grant of a summary judgment. Without unnecessary repetition of the standards that determine the propriety of summary judgment in this case, we refer the district court, the parties, and other readers of this opinion to *Jung–Leonczynska,* 782 P.2d at 581–83. If anything, the materials submitted by Steup in his second motion for summary judgment raise additional factual questions, e.g., was this a classroom situation as contemplated by the University regulations or some other kind of situation? The regulations of the University of Wyoming mandate that instructors exercise control over their classes, but at the same time they provide wide latitude to students to question their professors and the course of study taught. This was an independent study class which was attended only by Leonczynska and her husband. This may raise yet another question which must be addressed to a fact finder. At this point in the proceedings we are convinced even more than before that factual issues, which must be determined by a fact finder, are raised by Leonczynska's pleadings. *See generally,* W. Kaplin, *The Law of*

*Higher Education,* §§ 2.4.1, 4.4 (2d ed. 1985); *Clayton v. Board of Education,* 49 A.D.2d 343, 375 N.Y.S.2d 169 (1975), motion den. 38 N.Y.2d 1022, 384 N.Y.S.2d 449, 348 N.E.2d 925 and reversed on other grounds (without consideration of self-defense issue), 41 N.Y.2d 966, 394 N.Y.S.2d 882, 363 N.E.2d 588, later appeal (3rd Dept.) 73 A.D.2d 765, 423 N.Y.S.2d 548, appeal dismissed 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11.

We find it unnecessary to address any of the issues raised by Steup in his cross-appeal, because the central, and perhaps only, issue before the district court was Steup's motion for summary judgment. As discussed above, we hold the grant of summary judgment in favor of Steup to be erroneous based on the existence of material issues of fact which must be presented to a fact finder and legal issues that have yet to be resolved. Thus, even in the face of Leonczynska's absence from the first hearing and her absence from the second hearing on the motion to reconsider the grant of summary judgment (with the exception that her husband was there representing her interests), the district court erred in granting a motion for summary judgment when Steup had failed to carry his burden under *Matthews.* Of course, under these circumstances we need not consider Steup's claim that costs and penalties be assessed against Leonczynska for bringing a meritless appeal to this court. W.R.A.P. 10.05.

Reversed and remanded to the district court for further proceedings consistent with this opinion and our previous opinion in *Jung–Leonczynska.*

CARDINE, J., filed a dissenting opinion.

CARDINE, Justice, dissenting.

This is indeed a sad day for those in the teaching profession. They will be astonished to learn that this supreme court has approved and authorized a cause of action or suit by a student who now can recover money damages from a teacher who, in an effort to maintain control of the classroom, raises his voice and strikes the student's desk.

The classroom is a place for learning. The classroom atmosphere must be such that a fair and orderly exchange can occur between teacher and students. Keeping order in the classroom is often one of the major problems faced by teachers, and they ought to be accorded considerable latitude in the things found necessary to maintain the proper classroom decorum.

This case was really not much more than a simple verbal exchange between student and teacher. Factually reduced to its simplest terms, the student here was interrupting the teacher. The teacher attempted to maintain control of the situation by raising his voice. The student raised her voice until student and teacher were shouting at each other (this was a philosophy class). The teacher approached the student, both were shouting, and the teacher hit the desk at which the student was sitting. At this point, without more, all would agree that as a matter of law no assault or battery had occurred and there would be no cause of action upon which suit could be maintained. *See Restatement, Second, Torts* §§ 13, 21 (1965). But alas, student says that the teacher happened to strike a book on her desk which student says was touching her hand, and claims this to be a battery. I would hold that a battery did not occur in this case, and therefore there did not arise a cause of action upon which the student could maintain a suit for damages.

Not every unpleasant occurrence in everyday living gives rise to a cause of action or right to sue and recover damages. It is long held that words alone, no matter how distasteful, profane, unpleasant, or demeaning, will not support a claim for damages upon assault or battery. *Restatement, Second, Torts* § 31. So too, an unintentional touching in a crowd, for example, at a year-end sale or passing through the ticket line at a basketball game, does not give rise to a claim for damages founded upon assault or battery although the touch-

ing technically is a battery. *See Restatement, Second, Torts* § 18 and comment (g). Some of life's unpleasantries we simply accept as a cost of living together in a developed and sometimes crowded society. I would, therefore, hold that what occurred between teacher and student here was neither an assault nor a battery, and that student has no cause of action and may not maintain suit against teacher for recovery of damages.

There is another reason this case should be accorded a merciful demise. In addition to it being a wrong public policy decision, the court violates every rule of law governing litigation by pro se litigants and representation by lay persons. In this case appellant represented herself pro se. She complied with few of the rules of procedure with respect to pleadings, filing documents and appearances in court in pursuing this litigation against the teacher. We have consistently held that an individual who elects self-representation is held to the same standard as an attorney, *Annis v. Beebe & Runyan Furniture Co.*, 685 P.2d 678, 680 (Wyo.1984), and failure to comply with mandatory rules will result in dismissal of the case. A generous and compassionate judge declined dismissal of this case because of appellant's failure to comply with rules of procedure and practice. But there is more. Appellant did not even appear for the hearing on the motion for summary judgment. She was represented by her husband, a lay person. A second critical violation of our rules which provide that a lay person may not practice law and may not represent another in litigation before the courts. Rule 11, Rules Providing for the Organization and Government of the Bar Association of the Attorneys at Law; W.S. 33-5-117; *See Dawson v. City of Casper*, 731 P.2d 1186, 1187-88 (Wyo. 1987).

It ought to be clear to everyone that this case is going nowhere. This court would do society and teachers a service by acknowledging and applying its own rules of law and putting an end to this no-claim suit

for damages by student against her teacher.