PETTETT, APPELLEE, *v.* COOPER, APPELLANT.

(Decided November 13, 1939.)

*Messrs. Waite, Schindel & Bayless* and *Mr. Philip J. Schneider,* for appellee.

*Mr. Sanford A. Headley* and *Mr. Arthur Gordon,* for appellant.

MATTHEWS, J.   The appellant, Carrie C. Cooper, defendant in the trial court, was the owner of a farm

which she had leased to the appellee, L. J. Pettett, plaintiff below, for a term of one year from March 1, 1935, with the privilege of renewal for an additional year. The lease was in writing, but contained no provision imposing any conditions upon the right to renew or prescribing any method by which, or time in which, the intention to renew should be manifested.

More than three months before the expiration of the year and while the privilege of renewal still existed, the appellant, through her agents, entered into negotiations with the Resettlement Administration of the United States Government for the sale of this farm. As the prospective purchaser, at least in the beginning of the negotiations, demanded an unencumbered fee simple title with the right to immediate possession, and as appellee was in open possession of the farm to the knowledge of the Resettlement Administration which notified the appellant specifically that it would require a relinquishment in some form of whatever right he (the possessor) might have, the appellant, through her agents, entered into negotiations with the appellee for the surrender or cancellation of his rights under his lease.

The sale to the Resettlement Administration was consummated on March 13, 1936, by the delivery of a deed by the appellant, purporting to convey an unencumbered fee simple title, with right to immediate possession, and the payment of the purchase price by the Resettlement Administration. The appellee, at the same time, executed and delivered to the Resettlement Administration a quitclaim deed conveying to it whatever title he had in the farm.

The appellee alleged that the negotiations between him and the appellant resulted in a contract, in accordance with which he agreed to surrender his lease in consideration of the promises of the appellant to pay $2,150 and to waive her right to rent for the last

three months of the term; that he vacated the farm in accordance with his promise, and executed and delivered a quitclaim deed to the Resettlement Administration. The appellant failing to pay the $2,150, this action was instituted therefor.

The appellant denied both that the negotiations between her and the appellee resulted in any agreement to pay any amount and that the quitclaim deed was delivered in performance of any such contract. She also, by cross-petition, asked for judgment for the unpaid rent.

The issues were submitted to the jury, which by its general verdict found for the plaintiff, appellee, on all issues. Motions for a new trial and for judgment notwithstanding the verdict were overruled and judgment entered on the verdict. It is from that judgment that this appeal was taken.

(1) A part of the negotiations between the appellant and appellee took the form of letters passing between the appellee and appellant's agents. It is contended that by the letter of January 27, 1936, the parties completely integrated their intention into the writing, so as to exclude all prior negotiations on the subject. Predicating her contention upon this premise, the appellant asserts that the record presents no evidence of a meeting of the minds. This necessitates an examination of these letters in the light of the surrounding circumstances, as the law never determines the meaning of language *in vacuo* when it is used to create a legal relation between parties.

Now what is the evidence?

We find that there is no dispute that the appellant agreed to pay $2,150 and relinquish right to three months rent for the cancellation of the lease of the appellee; this obligation being conditioned upon the sale by appellant to the Resettlement Administration

for $37,500. As there was such a sale, the obligation thereupon became unconditional.

The appellant, claiming that there had been no meeting of the minds so as to create a bilateral contract and that at most she was bound by a unilateral promise that could have been accepted only by a cancellation of the lease contemporaneous with a conveyance by her of the fee simple title on or before February 29, 1936, to the Resettlement Administration, introduced evidence tending to support this thesis. We find, however, substantial evidence of oral negotiations tending to prove that a bilateral contract was entered into binding the appellee to cancel and the appellant to pay if and when the appellant sold the fee simple premises to the Resettlement Administration. In addition, the evidence of negotiations between the appellant's agent, the appellee, and the Resettlement Administration officer to secure the latter's consent that the appellee might continue in possession for another year is not compatible with continuance under the existing lease. If retention of possession was attributable to that, this consent of the grantee of the reversion would have been unnecessary. The transfer would have had no effect on the lessee's right.

But, it is said that the appellee testified that the letter of January 27, 1936, constituted the contract between the parties, and that inasmuch as it is stated in that letter that "in event payment is not made by February 29th, there will be no trade," we cannot consider this other evidence from which conclusions favorable to appellee can be and were drawn, and that as payment was not made by February 29th, whatever obligation existed, if any, expired on that date. It should be stated that a litigant cannot, by testifying to a legal conclusion, change the legal relations of the parties—and the appellee's testimony was no more than a legal conclusion. That the letter was not

written for the purpose of creating a formal written memorial of all the terms of the contract between appellant and appellee, is clear. By reference to the letter requesting it, it is clear the purpose in writing the letter was to advise the Resettlement Administration that appellee would vacate the farm upon payment of $2,150. This letter was written at the request of one agent of appellant to another of her agents who also occupied some relation of representative of the Resettlement Administration. In the latter's letter of January 29, 1936, to the appellee, which is a response apparently to the letter of January 27, 1936, it is stated that "If your lease is cancelled—we are to pay you $2,150 out of the proceeds of the purchase price paid by the Government to Mr. Cooper," and it is argued that this left the relation conditional and nonobligatory. We do not think that is necessarily the meaning. Notwithstanding the existence of a binding contract to cancel, the actual cancellation until made, was hypothetical, and where cancellation and payment were to be concurrent, the one was conditional upon the other.

Now it is only the writing or writings that are adopted by the parties as the final and complete expression of their agreement, that excludes all prior and contemporaneous negotiations on the same subject. 2 Restatement of Law of Contracts, 307, Section 228. We find no such intention expressed in this letter or in the actions of the parties. In the comment to Section 228, *supra,* it is said:

"Integrated contracts must be distinguished from written memoranda by which contracts may be proved, and from contracts formed by letters or other informal writings the words of which have not been assented to by both parties as a definite and complete expression of their agreement. It is an essential of an integration that the parties shall have manifested

assent not merely to the provisions of their agreement, but to the writing or writings in question as a final statement of their intentions as to the matters contained therein.''

We find no such intent manifested at the time as to this letter. According to the appellee's testimony, the minds of the parties had met, and the contract had been entered into some time before this letter was written by appellant. If so, the appellant could not, by writing a letter, accomplish an integration without the consent of the appellee. And, certainly, the testimony of a party at the trial as to his conclusions could not accomplish the result by retroaction.

We conclude then, that there was substantial, competent evidence of a bilateral contract binding the parties to the performance of the concurrent acts of cancelling and paying, conditional only upon a sale by the appellant to the Resettlement Administration unless the evidence is excluded by the statute of frauds.

(2) Does the statute of frauds preclude recovery? Can the appellant obtain the surrender or cancellation of rights under this lease and retain the resultant benefit and defend against the claim for the agreed consideration on the ground that her promise is not evidenced by a writing signed by her?

Of course, an agreement to surrender a lease *in futuro* must be evidenced by a writing, to be enforceable, if repudiated before the time has arrived for performance; but where there has been no such repudiation and the lease is surrendered and the lessor takes possession, the fact that the executory agreement was unenforceable does not in any way affect the executed transaction. The lease has actually been surrendered in such a way, recognized by the law, as to effectually extinguish the lessee's title. It has ceased to be a promise to convey and has become an actual conveyance. The statute of frauds deals with promises to

convey—not with conveyances themselves. The validity and effect of the latter are determined by the law relating to conveyances and not by the law relating to promises to convey.

We find no evidence in the record of a repudiation of the agreement prior to the time for performance. Indeed, the defense is that no contract was ever entered into. At no time, prior to March 1, 1936, did the appellant notify the appellee that she did not intend to fulfill her promise.

Now, so far as we are advised, there is no requirement—statutory or otherwise—that the promise to pay the consideration for an executed conveyance, to be enforceable, must be evidenced by a writing signed by the promisor. The statute applies only to executed contracts, and when that part of a bilateral contract that falls within the statute has been fully performed, the unexecuted part is provable by any competent evidence, and whether it is written or oral is immaterial.

In 25 Ruling Case Law, 707, Section 351, it is stated:

"As a general rule where an oral contract for the sale of land is consummated by the execution of a deed and its acceptance by the vendee, the vendor may recover the agreed price; and this is true where the deed is delivered to and accepted by an agent of the vendee, irrespective of whether his authority to accept is in writing or not. Also, according to the weight of authority, this is the rule where the conveyance is to a third person at the direction of the vendee."

We conclude, therefore, that the statute of frauds was no defense. This conclusion is predicated upon the competency of all the communications both written and oral relating to this subject that had any reasonable tendency to show a meeting of the minds of the parties. The assignment of errors, based on the admission of such communications, is not well founded.

(3) Complaint is made that the court gave two special charges to the effect that the fact that certain chattels belonging to plaintiff were not removed before the end of the year, and a subtenant of a house thereon still occupied it, were not conclusive of an exercise of the privilege of renewal of the lease. These charges correctly stated the law on the subject. 24 Ohio Jurisprudence, 1243 *et seq.* They were also relevant to the issues raised by the pleadings and the evidence.

(4) Various parts of the general charge are assigned as errors. We find that the objections to the general charge result from the fact that the court referred in one place to the contract as a written contract contained in a specific letter, and in other parts seemed to indicate that the contract, if any, was unilateral—a promise to pay if the lease was cancelled. From a reading of the whole charge, we have concluded that the jury could not have been misled by this to the prejudice of the appellant. From the whole charge, it is clear that the jury was told that the issue was whether the contract pleaded had been proven by the whole evidence—not merely by one item—and whether the appellee had performed by cancelling the lease in accordance with his obligation so to do.

(5) The court refused to submit a special interrogatory on request of the appellant, and that refusal is assigned as error.

The appellant proferred two interrogatories together with the request that the jury be instructed to answer them ''in case they find for the plaintiff.'' This requested instruction imposed an unjustified limitation and was erroneous. Section 11420-17, General Code, authorizes the submission of special interrogatories to be answered if the jury returns a general verdict, regardless of whether it is in favor of or

against the party making the request. *Gale* v. *Priddy*, 66 Ohio St., 400, at 405, 64 N. E., 437; *Reserve Trucking Co.* v. *Fairchild*, 15 Ohio Law Abs., 157 (reversed on other grounds, *Reserve Trucking Co.* v. *Fairchild*, 128 Ohio St., 519, 191 N. E., 745.)

Furthermore, the interrogatory called for an answer as to mere evidentiary matters, which is not the function of special interrogatories. *Otis & Hough* v. *Thompson*, 4 Ohio App., 61; *Ford Motor Co.* v. *Dillon*, 51 Ohio App., 278, 200 N. E., 525; 39 Ohio Jurisprudence, 1150, Section 420.

We have examined all the assignments of error, and are of the opinion that the record discloses no error, prejudicial to appellant.

The judgment is affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and ROSS, J., concur.