OTIS B. BARBER, Plaintiff in Error,

v.

D. J. SMYTHE, Defendant in Error.

(No. 2268; Dec. 7, 1943; 143 Pac. 2d 565)

For the plaintiff in error, the cause was submitted upon the brief of Fred W. Laymon of Casper, Wyoming.

For the defendant in error, the cause was submitted upon the brief of T. C. Daniels of Douglas, Wyoming.

## OPINION

BLUME, Justice.

This is an action in ejectment, brought by the plaintiff, D. J. Smythe, against Otis B. Barber, to recover possession of deeded and leased lands, consisting of 2080 acres of land, known as the Smythe Pasture, situated in Converse County, Wyoming. So far as the record shows there are no buildings on the land. Plaintiff also seeks damages for the detention of the property by the defendant. The defendant answered, and in his first cross-petition alleged that he was assignee of a lease of the premises to William Hildebrand; that the lease is in full force and effect; that the lease contains an option to purchase, and that he made an offer to purchase in accordance with the terms of the lease, and he asked that he be entitled to enforce the option. In a second defense, he alleged that it was agreed between the original lessee and the plaintiff that the original lessee should give possession of the premises upon the theory that the land had been sold, but that in fact the land was not sold according to the statement

of the plaintiff and that the lease was still in force and effect, and that he was willing to pay the rental due on the lease. He asked that the lease be held to be in force. Plaintiff replied, alleging in substance, that the lease was cancelled as of October 5, 1941, by mutual agreement entered into between himself and William Hildebrand on September 12, 1941. The court rendered judgment in favor of the plaintiff, restoring possession of the premises to him and giving the plaintiff damages against the defendant for withholding possession of the premises in the sum of $290. From the judgment so entered the defendant has brought the case here by petition in error. The parties will be mentioned either by name or as denominated in the Court below.

The essential facts are substantially as follows: On April 20, 1940, the plaintiff leased the premises in controversy to William Hildebrand for the period of five years, commencing May 1, 1940, at a rental of $300 per annum, half thereof payable on May 1st of each year and half thereof payable on October 1st of each year. The lease provided that the lessor might "use his own discretion to declare the lease null and void in case the lessee should fail to make payments on the dates on which they should be due." It provided further that lessor "reserves the right to sell this land during the term of this lease and in case of a bona fide offer, lessee shall have the first privilege of purchase if he sees fit to do so, provided, however, that in case of sale the lessee shall not be deprived of the use of the land within the year in which payments have been made." The lessee reserved the right to sublet any part or all of the land as he might deem proper. The payment due on May 1, 1941, was not made on that date and not for sometime thereafter. The plaintiff urged Hildebrand to pay. Before that was done, plaintiff received a bona fide offer to purchase from Olin Brothers at $3.25 per acre; that was about June, 1941. Plaintiff told Hilde-

brand of the sale and asked him to move immediately since the sale to Olin Brothers was based on the expectation that possession of the land would be given immediately. Hildebrand, however, maintained that he would be unable to vacate the premises immediately, and plaintiff, after consulting Olin Brothers, agreed that Hildebrand might remain on the premises until fall. On August 16, 1941, Hildebrand, the lessee, remitted to the plaintiff two checks signed by Fred Hildebrand, brother of the lessee, for $300 each. One of these was accepted by the plaintiff but the other returned. By reason of the payment of $300 the rental on the premises would have been paid in full up to May 1, 1942. Smythe testified that on September 12, 1941, upon his return from a trip away from home, Hildebrand, the lessee, came to him, told him that he had been looking for him, stated that he had sold his sheep and wanted $150 of the money which had been paid, returned to him in view of the fact that he had sold his sheep, and that it was agreed between the parties at that time that Hildebrand should vacate the premises by October 5, 1941. The $150 demanded back by William Hildebrand was paid to him at that time by the plaintiff, as shown by a check in the record. Excepting some minor discrepancies, this agreement was substantially admitted by William Hildebrand who made an affidavit and also testified in the case, and it appears therefrom that in view of the fact that he, Hildebrand, wanted to sell out, he had no objection to vacating the premises at the time above mentioned; neither did he have any objection to the sale of the land to Olin Brothers. His affidavit states, among other things:

"When I went to see Davie (plaintiff) to get the rent back and tell him I was moving, I was through with the land, knew it was being sold to Olin Brothers and it was O. K. with me, and if Davie had asked me for the lease paper back he could have had it."

Hildebrand, the lessee, actually vacated the premises on October 5, 1941, as he had agreed to do. Thereafter, apparently on October 6, 1941, the defendant Barber had a talk with Hildebrand, asking him whether or not he wanted to use the land any more. Hildebrand told him that he did not but that he, the defendant Barber, could use the land until November 1, 1941. The defendant Barber apparently moved his sheep on to the premises herein involved on October 10, 1941. Thereafter, between the 10th and 15th of October, 1941, the defendant induced Hildebrand to give him an assignment of the lease, which is dated October 1, 1941, but was executed about the time above mentioned and subsequent to the time that Hildebrand had vacated the premises. It appears that Barber offered to pay Hildebrand the sum of $25 but that was never paid, Hildebrand claiming that he had used the defendant's water in the preceding year and therefore would not take any money from Barber. On October 28, 1941, plaintiff addressed a letter to the defendant and to Hildebrand, stating that the lease in question would terminate as of November 1, 1941; that the offer made by Olin Brothers to purchase the land had been withdrawn because of the occupation of the premises by the defendant Barber, and asking that possession be given him on November 1, 1941, or that he would treat the occupant of the premises as a trespasser. Previously, on October 10, 1941, and apparently on the same day when the defendant moved his sheep on to the premises in question, the plaintiff went to see the defendant and told him that he was a trespasser and that Hildebrand had no rights in the land after October 5th. Plaintiff had another talk with defendant about October 14th, and again told him that he was a trespasser. This meeting was in the office of Attorney Gardner in Glenrock, and at that time, defendant offered to take the plaintiff's land for the same price already previously offered

plaintiff by Olin Brothers. This offer was refused. Barber also testified that he offered to Gardner on behalf of the plaintiff, but not in the plaintiff's presence, the sum of $150 for the rental due October 1st. Gardner refused to accept the money. The plaintiff testified that Gardner was not his attorney and had no right to act on his behalf. On October 31, 1941, the defendant caused Hildebrand to send to plaintiff the following telegram:

"I accept the bona fide sale of land according to our contract of May 1, 1941, and offer to purchase same at the same price as offered. I elect Otis B. Barber to act as my agent.
(Signed) William H. Hildebrand."

Defendant testified that he had this telegram sent because Gardner had told him that no one except Hildebrand had the right to exercise the option of purchase of the land.

There is apparently some inconsistency in the statement of the letter of the plaintiff that the lease would expire on November 1, 1941, and the claim that the lease was terminated on October 5, 1941. The letter was perhaps written on the theory that six months' rent had been paid from May 1, 1940, ending November 1, 1940. The trial court took the view that the period of five months from May 1st to October 1st, when the rent was payable, was more valuable than the seven months period from October 1st to May 1st, and that accordingly there were reasons that the rent should not be considered as paid up to November 1, 1941, but only to October 1st. And we think that there is reason in the holding of the Court. An agreement had been made that Hildebrand, the lessee, should vacate the premises by October 5th. That was done. Thereafter the defendant Barber occupied the lands and the plaintiff was in the predicament of determin-

ing how to get Barber off the premises. Perhaps, in order not to make any mistake as to the time of expiration of the lease, he wrote that the lease would expire on November 1st. Or the letter of October 28, 1942, might be considered a three days' notice to quit. As already mentioned, about October 10, 1941, plaintiff had a talk with the defendant. At that time plaintiff claimed that Hildebrand's rights expired on October 5, 1941, and that the defendant was a trespasser. A few days later in a conversation with the defendant, plaintiff again insisted that the defendant was a trespasser on the land. These conversations are inconsistent with the claim that the lease would not expire until November 1. And the expiration of the lease on that date is inconsistent with the agreement of plaintiff and Hildebrand made on September 12, 1941. Hence, we do not think that the date stated in the letter of October 28th should be controlling. In fact, we do not see how it can have any influence in the case if the agreement between plaintiff and Hildebrand became effectual when Hildebrand abandoned the premises on October 5, 1941. While it does not appear that the parties specifically agreed that the lease to Hildebrand, including the option to purchase therein mentioned, should be terminated and that Hildebrand should be released from further payment of rent, these facts may, we think, be implied from the circumstances and the agreement actually made. There was then ample consideration for the agreement. The release of one party to the lease is a sufficient consideration for the release of the other party. Hallam v. Commerce & Royalty Co., 49 Fed 2d 103, 107; Exeter Co. v. Samuel Martin, Ltd., 5 Wash. 2d 244, 105 Pac. 2d 83. Furthermore, the plaintiff paid to the lessee the sum of $150 in order that the lease might be terminated and surrendered, which was an additional consideration for the surrender of the lease by Hildebrand.

The main question, accordingly, is as to whether the agreement of September 12, 1941, is, under the circumstances of this case, enforceable. Counsel for the defendant claims that it is not, for the reason that a lease for five years, like that in the case at bar, cannot be cancelled except by a writing. The parol evidence rule would seem not to be applicable in a case of this kind for the reason that it seems to be agreed that the discharge, performance, release or abrogation of a written contract ordinarily may be shown by parol. 32 C. J. S. 929. If then it must be in writing, it must be by reason of the statute of frauds. Under the common law, as it stood prior to the adoption of the statute of frauds, a leasehold estate for years could, it seems, be surrendered by parol. 2 Tiffany, Landlord & Tenant, pgs. 1313, 1315. The English Statute of Frauds was adopted in 1676. It does not accordingly come within the provisions of Section 26-101, Revised Statutes 1931, by which we adopted the common law as of the fourth year of James the First (1603). Under the English Statute of Frauds a leasehold estate cannot be surrendered by parol. Many of the statutes of the states of this country are modeled after that statute, but the provisions of many of the statutes are more direct than the statute in this State by provisions expressly stating that an interest in real estate cannot be surrendered except by an agreement in writing, or by similar or even more specific provisions. See Tiffany, supra, Vol. 2, pg. 1313; Reed on the Statute of Frauds, Sec. 766. The only provision under our Statute of Frauds, namely Sec. 47-101, Rev. St. 1931, bearing on this point, would seem to be the fifth subdivision which provides that "every agreement or contract for the sale of real estate, or the lease thereof, for more than one year" shall, to be valid, be in writing. Whether a surrender of a lease for a term of years may be surrendered by parol under such a statute would seem to

present a question different from that arising under the English statute. In Montana & Wyoming Oil Co. v. Gibson, 19 Wyo. 1, 113 Pac. 784, it seems to be held that a verbal assignment of a lease to land for a long term is void under the statute of frauds. That appears to be the general rule. And it is said in Reed on the Statute of Frauds, supra, Sec. 766, that "it is believed that the same reasoning would apply to a surrender, being nothing more than a re-demise." It is not, however, necessary in this case to determine the point, and for the purpose of this case we may assume that our statute applies to a surrender of a lease for more than one year, as well as to the execution of leases for such term.

It is agreed among the authorities that a lease for a term of years may be surrendered by operation of law and that an agreement in writing is not necessary in such a case. We considered a case of that kind in Casper National Bank v. Currie, 51 Wyo. 284, 65 Pac. 2d 1116, 110 A. L. R. 360. In that case the tenant abandoned the premises and the landlord leased the property to another. We held that the landlord under the facts acquiesced in the abandonment, effecting a surrender of the old leasehold by operation of law. The case at bar is somewhat different. An oral agreement to surrender was made to take effect on October 5, 1941. The tenant vacated the premises on the date mentioned in the agreement. Nothing was thereupon done by the landlord and a stranger entered upon the premises a few days later, and who, subsequent to entering upon the premises, took an assignment of the lease from the original tenant. Of course, if the leasehold was in fact terminated on October 5, 1941, the original tenant had no further right to the possession of the land and his assignment of the lease could convey no interest to the defendant Barber. It is generally agreed by the courts that an actual surrender of the

premises and re-entry or acceptance thereof by the landlord extinguishes the leasehold. 32 Am. Jur. 764, 765; Anno. 4 A. L. R. 672; 37 C. J. S. 742. Thus it was said in Goldsmith v. Darling, 92 Wis. 363, 365, 66 NW 397, that "the same authorities also hold, and it is elementary, in fact, that a verbal agreement to surrender, acted upon by an actual surrender and acceptance, is sufficient to cancel the lease." That is in accordance with the general rule that an executed agreement is not within the statute of frauds. 27 C. J. 321 and subsequent pages; 37 C. J. S. 738 and subsequent pages. The reason seems to be two-fold. In the first place, the statute of frauds was intended to prevent fraud and perjury on the part of one seeking to enforce an oral agreement. The acts of the parties then are so open and plain that opportunity to commit fraud or perjury is absent. Again the statute of frauds relates to contracts or agreements. When a contract has been executed the transaction has passed beyond the stage of an agreement. In a case like that at bar, a completed conveyance has then taken place, just as in early times a conveyance was made not by deed or written transfer but by delivery and seizin. As was said in Pettet v. Cooper, 62 Ohio App. 377, 24 NE 2d 299:

"Of course, an agreement to surrender a lease in futuro must be evidenced by a writing, to be enforceable, if repudiated before the time has arrived for performance; but where there has been no such repudiation and the lease is surrendered and the lessor takes possession, the fact that the executory agreement was unenforceable does not in any way affect the executed transaction. The lease has actually been surrendered in such a way, recognized by the law, as to effectually extinguish the lessee's title. It has ceased to be a promise to convey and has become an actual conveyance. The statute of frauds deals with promises to convey—not with conveyances themselves. The

validity and effect of the latter are determined by the law relating to conveyances and not by the law relating to promises to convey."

In 32 Am. Jur. 764, referring to Anno. in 4 A. L. R. 666, it is said:

"Generally, an executed surrender, although the agreement for the surrender was oral, will be held good, but there is a difference of opinion as to the theory of the holding, one view being that the theory is by operation of law and that, therefore, the statute of frauds does not apply, and the other view being that the execution takes the oral agreement out of the statute."

The result of these cases, however, is the same. Anno. 4 A. L. R. 667. We see no reason for saying that the cases which merely state that the lease is surrendered by an executed oral agreement should not be considered as holding that the lease was surrendered by operation of law. A number of cases so consider it. Tiffany, Landlord & Tenant, Vol. 2, pg. 1332; Anno. 4 A. L. R. 672. If an oral agreement is not effective unless fully performed, but if performed is effective, then necessarily the surrender becomes effective by operation of law. The law attaches that effect to the oral agreement and the acts of the parties. It has been said that a surrender which is accepted is valid by reason of estoppel. 32 Am. Jur. 766; Taylor, Landlord & Tenant (9th Ed.) Vol. 2, 102. In Ford v. Miller, 149 Ark. 443, 232 SW 604, the court stated:

"Under the statute of frauds it is settled that a written lease can not be canceled or surrendered by parol agreement alone, but it is equally well settled that an executed parol agreement for the surrender of a lease will effect such cancellation. The rule of law invoked does not prohibit parol proof of a verbal agreement to surrender, which is effective when executed; but only goes to the extent of holding that such parol

agreement does not of itself constitute a surrender and cancellation of the lease. * * *

"In addition to the text writers cited above, it is well settled that a written contract for the lease of land may be canceled or surrendered by a subsequent, distinct and independent parol agreement between the parties performed by them. In such cases the conduct of the parties operates by way of estoppel."

But, as pointed out in Tiffany, supra, pg. 1322, "all the elements of an estoppel are not present in every case of a surrender" by operation of law. In Brown on Statute of Frauds, Sec. 48, it is said:

"* * * In an important case in the Court of Exchequer, it was said that the term 'surrender by act and operation of law" is properly applied to cases where the owner of a particular estate had been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate continued to exist. The great majority of cases, however, appear to place such surrenders upon the broader, and on the whole more satisfactory ground of acts done or participated in by the lessee, from which is to be presumed a clear intention that this previous estate shall cease."

See also to the same effect Reed on Statute of Frauds, supra, Sec. 722. Particular stress here is laid on the intention of the parties as manifested by their acts, and the reasoning here stated has been adopted in some of the states in this country. Thus, in Talbot v. Whipple, 14 Allen (Mass.) 177, a case very similar to Casper National Bank v. Currie, supra, the court said:

"The rule of law, as now settled by the recently adjudicated cases, is, that any acts which are equivalent to an agreement on the part of a tenant to abandon and on the part of the landlord to resume possession of demised premises amount to a surrender of a term by operation of law. * * * The facts in the present case are of the most unequivocal character on the part of both landlord and tenant, and leave no room for doubt as to the intent of the parties. The latter left the prem-

ises under circumstances which indicated a fixed purpose, not only to cease to occupy and to give up all control over them, but also to permit the landlord to gain access thereto and resume possession thereof. The former entered with a manifest design of accepting the abandonment and surrender of the term by the latter, and of finally determining the tenancy. The minds of the parties, therefore, concurred in the common intent of relinquishing the relation of landlord and tenant, and they executed this mutual intent by acts which are tantamount to a stipulation to put an end to the lease."

See also Carlton Chambers Co. v. Trask, 261 Mass. 264, 158 NE 786. In Meeker v. Spalsbury, 66 N. J. Law, 60, the court stated:

"When the minds of the parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant, and execute this intent by acts which are tantamount to a stipulation to put an end thereto, there, at once, arises a surrender by act and operation of law."

And in Miller v. Dennis, 68 N. J. Law, 320, 323, the court stated:

"* * * Under the statute of frauds * * *, no lease may be surrendered except by writing or by act and operation of law. It has been held in our Supreme Court, as well as in other jurisdictions, and we approve the doctrine, that when the minds of parties to a lease concur in the common intent of relinquishing the relation of landlord and tenant and execute this intent by acts which are tantamount to a stipulation to put an end thereto, there at once arises a surrender by act and operation of law. Meeker v. Spalsbury, 37 Vroom 60, and cases cited. Of course the terms of the surrender may be settled in advance by parol."

Under these cases the validity of the surrender is evidently not based on the doctrine of estoppel, but on the fact that the acts, whether consisting partly of an oral agreement, and partly of other acts, or of acts alone without an oral agreement, are evidence of an unequiv-

ocal stipulation that the leasehold was surrendered and terminated. That seems to be close to holding that the statute of frauds affects only the enforcement of contracts, not their recission. The situation is analagous to a surrender of an interest in land by a vendee. See on that subject Anno. in 38 A. L. R. 294, which shows much conflict in the authorities, except cases when the recission has been fully performed. The Massachusetts and similar cases, however, may also be construed to mean that when an unequivocal intent of parties appears by their agreement and their acts, or by their acts alone, then no opportunity exists for the perpetration of fraud or perjury which the statute of frauds was sought to prevent, and, the underlying reason for the holding would, accordingly, be the same as the underlying reason of the cases which hold that an executed oral agreement for surrender takes the case out of the statute of frauds. In fact in the case of Yuet v. Asiu, 34 Hawaii 1, the court seemed to think that the Massachusetts rule is the same as the rule relating to an executed oral agreement. The court said in part:

"The appellant attempts to invoke the statute of frauds * * * and advances the argument that because the lease was in writing a written agreement between the parties was required to effect a cancellation. Under the prevailing American rule a parol agreement unperformed cannot be enforced to cancel a written lease. Such an agreement does not per se bring about a cancellation of the lease but a parol agreement to surrender, acted upon by the parties, is sufficient to cancel the lease. This rule was adopted as early as 1867 by the supreme judicial court of Massachusetts in 14 Allen (Mass.) 177."

There can be no question that in the case at bar, the trial court was justified in finding that the parties intended that the lease should be surrendered. This intention was carried out by the tenant vacating the premises. It is true that the evidence does not show

that the plaintiff took physical possession of his premises after the tenant had vacated them, but the legal possession was in him. Acceptance of the surrender was necessary but the plaintiff did all he could do. He was not, we think, required to go and stay on premises without buildings so as to warn a trespasser to stay off the land. He had no reason to expect any trespasser. It is not always requisite that physical possession be taken by the landlord of the premises which have been vacated. Thus, it has been said that the acceptance of the keys to the premises may, together with other facts, tend to show a resumption of possession by the landlord. Tiffany, supra, Vol. 2, pg. 1357. Again the same authority states on page 1342 that "it is sufficient according to some cases, that the abandonment or relinquishment of possession of the tenant is in accordance with a previous demand or request by the landlord, it thus being immaterial whether the landlord's expression of assent to the relinquishment is previous to or after the occurrence." In Patchin v. Dickerman, 31 Vt. 66, the court stated: "When Patchin ordered Harbor to leave, and he did leave, the two acts would seem to constitute a surrender and acceptance of the possession between the parties without any further act by either of them." If the relation of landlord and tenant continued to exist after October 5, 1941, it must be held to be true as to both parties. Yet it can hardly be claimed that the plaintiff could have forced Hildebrand, the tenant, to continue the relationship. The premises were vacated by the tenant on October 5, 1941. It was not occupied by the defendant until October 10. In the meantime the legal possession was in the plaintiff, and it is clear from his previous oral agreement that he personally or through purchasers

from him intended to resume the possession when vacated by the defendant. We think the case shows a clear, executed oral agreement and that the judgment of the trial court should be upheld. It is so ordered. KIMBALL, Ch. J., and RINER, J., concur.

*Affirmed.*