AUTOMATIC GAS DISTRIBUTORS,
INC., a Colorado corporation,
Appellant (Defendant),

v.

STATE BANK OF GREEN RIVER, a
Wyoming banking corporation,
Appellee (Plaintiff).

No. 90–237.

Supreme Court of Wyoming.

Sept. 20, 1991.

Richard Mathey of Reese & Mathey, Green River, for appellant.

Lawrence A. Marty of Marty & Ragsdale, Green River, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

This case involves a dispute between the State Bank of Green River (Bank) and Automatic Gas Distributors, Inc. (AGD) over which of their competing interests is senior in the property being foreclosed. AGD appeals the district court's summary judgment ruling that AGD "surrendered" its earlier, unexpired lease when it executed a subsequent lease for a longer term in the same property. As a result of this ruling, the Bank's mortgage was held senior to AGD's subsequent lease.

The issues, as presented by AGD, are as follows:

"1. Whether a genuine issue of material fact existed and was unresolved at the time summary judgment was entered herein against Appellant.

"2. Whether the District Court misconstrued one of the documents upon which it relied in entering summary judgment herein against Appellant.

"3. Whether Appellee State Bank of Green River was entitled to judgment against Appellant as a matter of law."

We affirm.

In 1984, AGD leased property from WestAmerica Foods, Inc. for a self-service gas-

oline station. This lease was for a term of ten years and would expire March 1, 1994. It provided for two renewal options of five years each. A memorandum of this lease was recorded in the Sweetwater County Clerk's office in 1984. Ownership of the property then passed through various grantees until the Bank became owner of it. On October 6, 1988, Trans–Western Development, Inc. acquired the property from the Bank in exchange for a purchase money mortgage. On October 10, 1988, and before the expiration of the term of the 1984 lease, AGD and Trans–Western executed and entered into a new lease on the same property. The new lease provided:

> "Landlord hereby leases to Tenant for the term and on the rentals and conditions set forth herein, that portion of the Premises more particularly described on the map or plat attached hereto as Exhibit B and incorporated herein, along with all of the rights, privileges, easements and appurtenances thereunto attached and belonging, *subject only to those leases*, deeds of trust, *and other encumbrances set forth on Exhibit C* attached hereto and incorporated herein." (emphasis added)

Exhibit C, attached to the lease and as written by the parties, is as follows:

"EXHIBIT C TO SPECIAL
PURPOSE LEASE

"ENCUMBRANCES AGAINST
THE PREMISES

"State Bank of Green River—$170,000."

The 1988 lease required a listing of "leases" to which the premises were still "subject." The 1984 lease was not listed on Exhibit C. Listed on Exhibit C was only the purchase money mortgage which demonstrates clearly that the premises and the 1988 lease were subject to the Bank's mortgage and nothing else.

On October 21, 1988, the Bank recorded its purchase money mortgage from Trans–Western. Later, on October 31, 1988, a memorandum of the 1988 lease was recorded in the Sweetwater County Clerk's office. Trans–Western failed to make the pay-

ments upon the mortgage, and the Bank filed this foreclosure action.

In its complaint, the Bank included AGD, Trans–Western, and other defendants who had interests in the property. AGD is the only defendant left on appeal, all other defendants having either defaulted or decided not to pursue this appeal. The Bank filed a motion for summary judgment asserting that AGD "surrendered" its 1984 lease when it executed the 1988 lease. In support of its motion, the Bank attached copies of the 1984 and 1988 lease agreements. AGD filed a brief opposing the Bank's motion for summary judgment and argued that the Bank had failed to present any evidence that would demonstrate that AGD intended to surrender its 1984 lease. The district court noted that there was no genuine issue of material fact and entered judgment for the Bank.

■ A grant of summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law. *Brazelton v. Jackson Drug Co., Inc.*, 796 P.2d 808, 810 (Wyo.1990). Leases are contractual in nature, and their construction and interpretation are for the court as a matter of law. *Id.* In *Jones Land and Livestock Co. v. Federal Land Bank*, 733 P.2d 258, 262 (Wyo.1987), we stated that:

> "If the language of the contract is plain and unequivocal that language is controlling and the interpretation of the contractual provisions is for the court to make as a matter of law. The meaning of the instrument is to be deduced only from its language if the terms are plain and unambiguous." (quoting *Shepard v. Top Hat Land & Cattle Co.*, 560 P.2d 730, 732 (Wyo.1977))

The Bank, as the movant, had the initial burden of demonstrating the absence of any genuine issue of material fact and that it was entitled to a judgment as a matter of law that AGD surrendered its 1984 lease. *Fiscus v. Atlantic Richfield*, 773 P.2d 158, 161 (Wyo.1989).

■ Neither lease is ambiguous, and therefore, we do not look beyond those

documents to determine their meaning. *Jones Land & Livestock*, 733 P.2d at 262. The express language of the 1988 lease states that it is

> "subject *only* to those *leases* * * * set forth on Exhibit C attached hereto and incorporated herein." (emphasis added)

Significantly, the 1984 lease was not listed on Exhibit C. The only document listed on Exhibit C as an encumbrance was the Bank's mortgage. The 1984 lease not being listed, it, by written agreement of the parties, is not embraced and did not survive the 1988 lease. Our examination of the documents attached to the Bank's motion for summary judgment convince us that the Bank met its burden.

AGD nevertheless alleges that, contrary to its express written agreement and without any supporting facts, that it alone intended that its 1984 lease survive without being listed on Exhibit C attached to the 1988 lease and that it remained an encumbrance prior to the Bank's purchase money mortgage.

■ It is probably unnecessary for us to address this unilateral conclusory claim supported by nothing. Nevertheless, we find additional support, as did trial Judge Ryckman, for the result here reached in *Barber v. Smythe*, 59 Wyo. 468, 143 P.2d 565, 568 (1943), wherein we said:

> "It is agreed among the authorities that a lease for a term of years may be surrendered by operation of law and that an agreement in writing is not necessary in such a case."

*See also Application of Hagood*, 356 P.2d 135 (Wyo.1960); *Casper Nat'l Bank v. Curry*, 51 Wyo. 284, 65 P.2d 1116, 1118–19, 110 A.L.R. 360 (1937). Thus there is a presumption, to which the Bank was entitled, that acceptance by the tenant of a new lease of the demised premises during the term of an old lease operates as a surrender of the old lease by the act of the parties. Presumption of intent to surrender results from the making of the new lease and acceptance. *State v. Fin & Feather Club*, 316 A.2d 351, 356–57 (Me. 1974) (citing *Brown v. Linn Woolen Co.*, 114 Me. 266, 269, 95 A. 1037, 1038 (1915)).

*See also* 49 Am.Jur.2d Landlord and Tenant § 1103 (1970), wherein it is stated:

> "A surrender of a lease is implied by law when another estate is created by the reversioner or remainderman, with the assent of the tenant, incompatible with the existing term. So, as a general rule, when a new lease of the premises is taken by the lessee from the lessor for the whole or a part of the term embraced in the former one, there is said to be a surrender in law, because the giving of a new lease necessarily implies a surrender of the old one." (footnotes omitted)

The rule of surrender implied by law is so well established as to be without dispute.

We also have duly considered the remainder of the above quotation, which is:

> "In any case, however, if the circumstances are totally inconsistent with the intention of the parties that the giving of the new lease shall operate as a surrender of the existent lease, it will not be given such an operation." *Id.*

It has no application to this case. Nothing was presented which constituted "circumstances * * * *totally inconsistent* with the intention of the *parties*" to surrender. Thus, appellant does not claim it was misled by the parties' negotiations, statements, misrepresentations, or promises that induced making the new lease. Appellant does not explain why it made a new lease nor does it claim that the *parties* intended the 1984 lease remain in effect. Appellant only claims that it, *one party*, intended that the 1984 lease remain in effect; and that claim is based upon its bald, conclusory, single assertion that appellant did not intend to surrender. That is insufficient to defeat summary judgment.

There was nothing before the court concerning acts of the parties to rebut the presumption or establish a different intention. The 1988 lease took effect before the expiration of the 1984 lease and extended the term of the lease beyond that called for in the 1984 lease. The fact that the 1984 and 1988 leases are for the same property, that the property changed hands between leases, that the new lease is for a longer term and is subject only the Bank's encum-

brance, is sufficient to establish the surrender of the earlier lease.

The trial court is accused of a result oriented decision when the dissent states "a presumed intent to achieve a probable undesired result * * * fuels my disagreement with [the majority]." Dis. op. at 1. In truth, the disagreement really is fueled by inappropriate use of conjecture, speculation or private inquiry, assembling special facts and then retrying and redeciding the case according to a personal view of justice—alluded to as a rule of "common sense." *See also Monn v. State*, 811 P.2d 1004 (Wyo.1991); *Clarke v. Vandermeer*, 740 P.2d 921 (Wyo.1987). For example, it is interesting here that the precise language of the parties' written agreement is ignored and a nonexistent legal principle asserted that if a *party* to an agreement did not intend to face foreclosure, and foreclosure results, then his agreement is unenforceable and void. It is then stated that we " 'begin with a presumption' that Automatic Gas Distributors, Inc. intended to surrender the first lease." Dis. op. at 446. We did not begin with that presumption at all. We began with the plain, unambiguous provisions of the lease itself.

There is also allusion to an "intent and circumstance rule" said to be found in *Application of Hagood*, 356 P.2d 135, which is said to not support our conclusion. The alleged rule, if it can be found in *Hagood*, has no bearing on this case. And the rule of "common sense" is indeed an odd anomaly. Were we to adopt this rule, we could repeal all statutes and common law and in each case just determine what common sense tells us should be the final decision. Solemn agreements, even written contracts, would be unenforceable—of no effect. Only what some jurist perceived as "common sense" would survive, and we truly would be a government of men and not law.

Let us now examine the rather unusual manner in which the dissent assembles a hypothetical factual basis for application of nonexistent law. Thus, initially stated was the following:

"The record, such as it is, *would suggest* [changed in revised dissent to 'reveals in leasehold documentation'] that the convenience store operation included normal maintenance and general operation of the gasoline facility. Actually, *we do not know* [changed in revised dissent to 'are not informed at this summary judgment stage'] whether this was a self-standing coin-operated installation or a facility with in-store controls. *Marketing agreements of this type could* either *be a* royalty arrangement payable to the adjacent store operator with responsibilities for gas purchases and general operation vested in the facility owner or general operational responsibility vested in the store with a royalty interest payable to the facility owner. *Whichever this may have been* could significantly impact the ultimate resolution to determine intent where clearly State Bank of Green River decided after foreclosure to end the operation of Automatic Gas on the premises." (emphasis added) Dis. op., n. 2.

Relying upon "would suggest," "we do not know," "could be," and "whichever this may have been" cannot form a sound basis for this inappropriate effort to inject a nonexistent doctrine that the contrary intent of a *party* to an agreement is sufficient to void the agreement. It is likely that had appellant foreseen a foreclosure, it may not have entered into the 1988 lease. The same can be said of the purchase of real estate at a price too great which then goes into foreclosure, or of any other agreement which is less favorable than hoped for. The essence of this proposed doctrine is that we void the express written agreement of the parties, recognize that the party facing foreclosure did not intend to face foreclosure, and rewrite and relieve that party of the obligation of his agreement. If this result is appealing, it is a result we should not effect, for we are obligated to apply the law as we find it.

■ The intent of *one party* alone is not sufficient to avoid surrender of a prior lease. Thus, quoting from *Van Rensselaer's Heirs v. Penniman*, 6 Wend. 337, 343 (N.Y.1831), it is stated:

"[i]f the acts of the *parties* in this case, taken all together, are such as to rebut the idea of a surrender, then none ought to be presumed."

The intent not to surrender must be the intent of the *parties*—not one of the parties. The intent of the Bank could not have been more clear. Its purchase money mortgage with $170,000 exposure was conditioned upon there being no encumbrance ahead of the Bank. Otherwise, why make a new lease? Both parties must have understood the new lease had some purpose. Appellee does not tell us what that purpose was. But the purpose appears from the lease itself which clearly provides that the prior lease is not an encumbrance. It was interesting that when appellee's counsel was asked at argument what he would think if this court held the prior lease—though not listed on Exhibit C—to be an encumbrance, counsel replied, "I'd be flabbergasted." So would the writer of this opinion, as would members of the bar.

Given the Bank's evidence that AGD surrendered its lease, the burden shifted to AGD to provide evidence to the contrary. *See Jones Land & Livestock,* 733 P.2d at 263 wherein it is stated:

"[O]nce the movant has established a prima facie case, the burden then shifts to the opposing party to come forward with competent evidence of specific facts countering the facts presented by the movant."

Admittedly, AGD's burden to show a contrary intent was difficult given the unambiguous provisions of the 1988 lease. AGD's conclusory single assertion denying intent to surrender contrary to the subsequent unambiguous lease did not provide any sufficient evidence to overcome the plain meaning of the documents. Allegations stating a different theory in opposing a summary judgment motion are insufficient. We stated in *Fiscus,* 773 P.2d at 160–61 (Wyo.1989), that "the beneficial purpose of summary judgment would be defeated if cases could be forced to trial simply by an assertion that a genuine issue of material fact exists." In order to defeat the Bank's showing of surrender, AGD needed to come forward with specific competent evidence showing that there existed a genuine issue of material fact concerning surrender of the lease. *Jones Land & Livestock,* 733 P.2d at 263. It failed to do this. The Bank was therefore entitled to judgment as a matter of law that AGD surrendered its 1984 lease.

Finally, this opinion does not memorialize discord within the court, but rather demonstrates an honest disagreement upon a point of law—not an uncommon occurrence within the legal profession. Thus, involved here is a healthy, robust debate of important questions by professionals that can only be of benefit to all.

The district court's judgment ruling the Bank's mortgage senior to AGD's lease and foreclosing AGD's interest in the property is

Affirmed.

THOMAS, J., concurred in the result.

MACY, J., filed a specially concurring opinion.

URBIGKIT, C.J., filed a dissenting opinion.

MACY, Justice, specially concurring.

I agree with the result reached in the majority opinion. I do not, however, join with the majority's reply to the dissent. I am of the opinion that the practice of replying in a majority opinion to a dissent serves only the purpose of memorializing the discord between some members of this Court and is, therefore, improper. *Griffin v. State,* 749 P.2d 246 (Wyo.1988) (Macy, J., specially concurring).

URBIGKIT, Chief Justice, dissenting.

The trial court's application of a presumed intent to achieve a probable undesired result before a complete factual development fuels my disagreement with the decision to affirm summary judgment. A century-old concept clearly stated by *Van Rensselaer's Heirs v. Penniman,* 6 Wend. 337 (N.Y.1831) was misapplied and then combined with an undocumented factual analysis for a summary judgment decision.

The trial court and the majority have mixed up the parties and have presumed intent that the lessee intended to relinquish title priority in favor of a bank which became the owner-lessor through foreclosure, but was never a party by execution of a lease.

I dissent because I believe the approach adopted by the majority departs from our established standard of review for summary judgments. Traditionally, "[w]e analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion[,] giving him all favorable inferences that can be drawn from the facts." *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987). In this case, we instead "begin with a presumption" that Automatic Gas Distributors, Inc. intended to surrender the first lease by accepting the new lease. This is done mechanically rather than by exploring all inferences favorable to the notion that Automatic Gas did not intend to surrender the first lease at its severe economic disadvantage.

Why this approach? Because a court in Maine in 1974, relying on prior Maine case law, decided that the acceptance of more restrictive leases by certain lessees gave rise to a presumption that the lessees intended to surrender the prior lease. *See State v. Fin and Feather Club*, 316 A.2d 351, 356–57 (Me.1974). Even so, that presumption was rebuttable. " '[I]f the acts of the parties taken all together, are such as to rebut the idea of surrender, then none ought to be presumed.' " *Id.* at 356–57 (quoting *Brown v. Linn Woolen Co.*, 114 Me. 266, 269, 95 A. 1037, 1038 (1915)).

Nor is the majority's reliance on 49 Am. Jur.2d *Landlord and Tenant* § 1103 (1970) justified. "In any case, however, if the circumstances are totally inconsistent with the intention of the parties that the giving of the new lease shall operate as a surrender of the existent lease, it will not be given such an operation." *Id.*

If the legal presumption of an intent to surrender the first lease was a matter of statement in prior Wyoming case law, I could understand the position adopted by the majority. However, the intent and circumstance rule of *Application of Hagood*, 356 P.2d 135 (Wyo.1960) does not sustain the current decision.[1] Automatic Gas was doing no more than relying upon prior Wyoming case law—which did not give rise to an arbitrarily applied presumption—as well as the established standard of review for summary judgments in Wyoming. *See Jung-Leonczynska v. Steup*, 803 P.2d 1358 (Wyo.1990); *Wagner v. First Wyoming Bank, N.A. Laramie*, 784 P.2d 224 (Wyo. 1989); *Jung-Leonczynska v. Steup*, 782 P.2d 578 (Wyo.1989); *Provence v. Hilltop Nat. Bank*, 780 P.2d 990 (Wyo.1989); *Baros v. Wells*, 780 P.2d 341 (Wyo.1989); *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989); *Case v. Goss*, 776 P.2d 188 (Wyo.1989); *Doud v. First Interstate Bank of Gillette*, 769 P.2d 927 (Wyo.1989); *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174 (Wyo.1988); *Petersen v. Campbell County Memorial Hosp. Dist.*, 760 P.2d 992 (Wyo.1988); *Johnston v. Conoco, Inc.*, 758 P.2d 566 (Wyo.1988); *Wessel v. Mapco, Inc.*, 752 P.2d 1363 (Wyo. 1988); *Farr v. Link*, 746 P.2d 431 (Wyo. 1987); and *Stundon v. Sterling*, 736 P.2d 317, 318 (Wyo.1987).

In February 1984, Automatic Gas obtained a self-service gasoline facility premises lease on a lot in a commercial subdivision in Green River, Wyoming. The lease, with an initial term of ten years and two five-year renewal options, included a duly recorded notice memorandum. A separately prepared marketing agreement determined rent.[2]

1. In *Application of Hagood*, 356 P.2d at 139 (footnote omitted), we stated the rule which is completely consistent with the seminal American case of *Van Rensselaer's Heirs*, 6 Wend. 337:

> Whether or not a later instrument constitutes a new lease or merely a modification of a prior lease is a question of intent deducible from the circumstances and especially from the instrument[.]

2. The record, such as it is, reveals in leasehold documentation that the convenience store operation included normal maintenance and general operation of the gasoline facility. Actually, we are not informed at this summary judgment stage whether this was a self-standing coin-oper-

The lessor-landlord obviously had financial difficulties. In due time, the State Bank of Green River acquired the underlying fee title by mortgage foreclosure and purchase at sale through a sheriff's deed. State Bank of Green River, then *as vendor*, resold the real estate to Trans–Western Development in which transaction, for unexplained reasons, a second lease agreement was executed on this occasion between the new purchaser of the property, Trans–Western, and the existent lessee, Automatic Gas. Trans–Western also failed financially and the State Bank of Green River re-foreclosed on the real estate pursuant to its vendor's purchase money mortgage.

The issue of the case, however stated, is whether in the foreclosing lender's resale of the property the developed documentation caused a subordination of the prior leasehold rights of Automatic Gas in favor of the later purchase money mortgage lien acquired on resale by the lender.

Having begun with a presumption against Automatic Gas rather than looking for inferences favorable to Automatic Gas, the majority then requires Automatic Gas to have anticipated our reliance on Maine case law and have come forward with competent evidence that Automatic Gas did not intend to surrender the prior lease. But in the absence of this *Fin and Feather Club* presumption, the burden would not have shifted to Automatic Gas. Additionally, because the subsequent lease is used to ground the presumption of an intent to surrender the first lease, the majority cannot then claim the subsequent lease is added weight to the legitimacy of the presumption. Where the State Bank of Green River did not produce evidence on the issue of

intent, Automatic Gas was not required to do so in response.

Material facts regarding negotiation, adoption, and execution of the second lease may or may not be in conflict. Lack of conflict about those historical facts would not be dispositive. The issue is whether the material facts could give rise to an inference that Automatic Gas did *not* intend to surrender all the benefits of the prior lease and thereby promote the security interest of the State Bank of Green River over that of itself as a lessee with a prior recorded title interest. " 'Even where the facts bearing upon the issue of negligence are undisputed, * * *, if reasonable minds could reach different conclusions and inferences from such facts, the issue must be submitted to the trier of fact.' " *Cordova v. Gosar*, 719 P.2d 625, 639 (Wyo. 1986) (accord *Fegler v. Brodie*, 574 P.2d 751, 754 (Wyo.1978)). One favorable inference which could reasonably be drawn from the documents presented to the trial court is that Automatic Gas intended to preserve the rights and benefits it had under both leases.

In my view, this majority is ambushing the law firm for Automatic Gas because to predict this outcome, an attorney would have to anticipate that this court would depart from its established standard of review that begins with a presumption in favor of the summary judgment non-movant, turn to twenty-year-old Maine case law to justify a presumption against the non-movant in this case, and then require Automatic Gas to come forth with evidence to counter the presumption creating an unlikely intent. The outcome assumes that Automatic Gas intended to become secondary to the security interest of the State Bank of Green River. I think alternative

ated installation or a facility with in-store controls. Marketing agreements of this type could either be a royalty arrangement payable to the adjacent store operator with responsibilities for gas purchases and general operation vested in the facility owner or general operational responsibility vested in the store with a royalty interest payable to the facility owner. Whichever this may have been could significantly impact the ultimate resolution to determine intent where clearly State Bank of Green River decid-

ed after foreclosure to end the operation of Automatic Gas on the premises. The marketing agreement referred to in Section 15 in the first lease and Article 8 of the second lease is not included in the record documentation. Its preeminence is shown by a provision stating "that any provisions of the Marketing Agreement which are inconsistent with the provisions of this Lease shall control, supersede and have priority over the provisions of this Lease."

inferences in good common sense can easily compete with such an inference.

The principle involved here has far more ancient history and the rule as applied by this majority is only partially stated. The basic American case with historical factual ancestry before the American revolution, derived from a 1766 lease, is *Van Rensselaer's Heirs*, 6 Wend. 337. In *Van Rensselaer's Heirs*, the court recognized the principle based on much earlier legal history to answer the question of whether the acceptance of a second lease was a surrender of the first in recognizing two corollary principles to be applied. "It seems to be well settled, that if a lessee accepts a new lease of the same premises during the term in the first lease, the first is deemed to be virtually surrendered." *Van Rensselaer's Heirs*, 6 Wend. at 342. It then stated the responsive principle that "[i]f the acts of the parties in this case, taken all together, are such as to rebut the idea of a surrender, then none ought to be presumed." *Id.* at 343. That court recognized that "when such presumption cannot be presumed, without doing violence to *common sense,* the presumption will not be supported." *Id.* at 342 n. (a) (emphasis added). Common sense consequently becomes a condition precedent for the presumption to exist within its factual environment.

The application of common sense, although not necessarily ever bad, as developed by the historical precedent applicable here, involves usage of an unreasonable external presumption. Common sense, as an anomaly or not, has absolutely nothing to do in this case with internal interpretation of the third party documents. The common sense *Van Rensselaer's Heirs* rule with over 200 years history addresses in this dissent application of a court created presumption to determine intent which does not make common sense in presump-

tion application. The law should not imply or presume an absurd intent and the *Van Rensselaer's Heirs* rule states that common sense principle of logic and human experience.

In *Van Rensselaer's Heirs*, the court found that the circumstances failed to provide the required common sense justification.

> On the supposition that a surrender was intended, the lessee must have intended to abandon all claim for his improvement, and to give up a good title for *three lives,* on receiving a lease for *one* of those lives. * * * I cannot believe that a surrender was intended. The authorities say that the surrender in cases of second leases is presumed from the intention of the parties. In this case, every circumstance, except the fact of receiving the second lease, altogether rebuts the idea of an intention to surrender the right to compensation for improvements.[3]

*Id.* at 343.

Non-application of the presumption when it defies its requirement of common sense was restated in *Coe v. Hobby,* 72 N.Y. 141, 146 (1878) (citing *Van Rensselaer's Heirs,* 6 Wend. 337):

> In the case of a term for years, or for life, it may be [that surrender of the lease is implied] by the acceptance by the lessee or termor of an estate incompatible with the term, or by the taking of a new lease by a lessee. It will not be implied against the intent of the parties, as manifested by their acts; and when such intention cannot be presumed, without doing violence to common sense, the presumption will not be supported.

*Coe* was decided in recognition that no surrender of the existing lease should be implied by law as resulting from the presumed intention of the parties under the factual situation presented.

---

**3.** There is an additional similarity within the facts in the cases emplaced nearly 160 years apart. The court said in *Van Rensselaer's Heirs* that for a surrender to be effective, it "should be made to the lessor, or the reversioner. John I. Van Rensselaer was neither." *Van Rensselaer's Heirs,* 6 Wend. at 343. Here, State Bank of Green River is not the original lessor, or assignor or grantee of the original lessor. State Bank of Green River is a twice involved lender whose rights are only promoted if the original lease between Automatic Gas and a far removed third party is superseded by the later separate transaction between the lessee and a different party. The identity of parties criteria required as a foundation of the presumption does not exist here where the State Bank of Green River was neither the *first nor the second lessor.*

*Brown,* 95 A. at 1038 is completely consistent in assessing the facts to reject the presumption *and to retain in effect the first lease.*

Presumption of an intention to surrender [a prior lease] follows such acceptance [of a succeeding lease]—"but if the acts of the parties, taken all together, are such as to rebut the idea of a surrender, then none ought to be presumed."

Unfortunately, trial developments in this case provide no actual information to determine intent. Mistake, accident, attorney neglect, lack of foresight or even bad planning could have been the motivating cause for acceptance by Automatic Gas as lessee of an overriding, superseding or supplementary second lease under these circumstances. The tenant who is the holder of a long term lease, if then to become subordinated to the lender of a new owner, is at best a pigeon to be plucked unless extraordinary protection is otherwise provided.

Clearly, this litigation *has not been developed by trial preparation* to produce a sufficient record to justify summary judgment without presumption. In addressing documentation, it bears repeating: Nothing of record reveals any dealings between the lessee and the foreclosing lender when the resale transaction developed. If the lessee waived rights established by the first lease, it did so in negotiation with the new owner and not the owner-vendor, State Bank of Green River, which retained the purchase money sale mortgage upon that resale.

It is not conjecture to recognize inadequate factual record development in this case. The record tells what is *not* provided as conspicuously and comprehensively as do the assumptions and presumptions of the majority in addressing what was provided to determine that Automatic Gas, in negotiation with Trans–Western, intended to relinquish rights which it had acquired at an earlier time from a different party in order to benefit a third party and promote

the lien of a resale mortgage. What does not make common sense here is a presumed intent that a party would unnecessarily give up something for the benefit of a third party with whom it was not negotiating. If it is suggested that the State Bank of Green River, as vendor, entered into the transaction between the prospective new owner and the tenant, that assumption is not validated by this record.

Presumptions aside,[4] everyone in these transactions should have known about and understood how to use a written subordination agreement when the new purchaser brought into this mine field a purchase money mortgage. From the standpoint of the lessee, thoughtful judgment would have established, as these historical events have demonstrated, that the change was all risk and no benefit and surely would never be voluntarily accepted as a benefit for the prior owner without significant substitute compensation from the new owner. To presume a knowing acceptance of this heightened risk as now illustrated by what subsequently occurred would attribute sheer folly or more likely total invalidity of any provided legal services. It was the priority protection afforded by the earlier recording date of the commercial land lease which maintained some reasonable economic validity of the tenancy. In result, *on this record,* we presume total ineffectiveness of someone or clear mistake.

In retrospect, it is certain that the present result was not planned when, during preparation of the legal documents between the lessee and the new owner, legal counsel failed to address abandonment, modification, or retention of the rights provided in the first lease. Specifically, counsel failed to address title interest priority by date of recording.

In *Van Rensselaer's Heirs,* the court knew enough about history and factors of title to reject the presumption on the evi-

---

**4.** In litigative progression from initial trial court decision to present final appellate court decision and opinion, the philosophically defined bent of decision has changed from an initial presumptive legal issue determination case, *Cordova,* 719 P.2d 625 (stage five), by change to *Cordova,* 719 P.2d 625 (stage four), involving the propriety of summary judgment resulting from respondent's failure to file a resisting affidavit, and finally to a factual assessment that there is no material conflict of fact, *Cordova,* 719 P.2d 625 (stage six).

dentiary title records. In this case, lacking knowledge of what occurred and anticipating a margin for error for simple bad judgment, I would leave with the trial court the responsibility to determine intent from evidence presented in an actually conducted trial, with recognition that common sense has a place. "Intent is to be derived from an examination of all of the surrounding facts and circumstances" and is "a question of fact." *Smith v. Neely*, 93 Ariz. 291, 380 P.2d 148, 150 (1963). Rejecting the windfall, I conclude here that the requisite intent has been neither established by fact nor by legitimate presumption. *See Edelman v. Henderson*, 294 F.Supp. 323 (D.V.I.1968) and *Burger v. Western Sand & Gravel Co.*, 237 S.W.2d 725 (Tex.Civ. App.1950). This court has also recognized that intent is an issue of fact. *Anderson Excavating and Wrecking Co. v. Certified Welding Corp.*, 769 P.2d 887 (Wyo.1988); *United States Through Farmers Home Admin. v. Redland*, 695 P.2d 1031 (Wyo. 1985).

Whatever may be said in factual examination for opinion writing, the historical facts in this case are not in dispute. There are four parties involved in the course of the transaction for the purpose of this appeal: (1) the original lessor, WestAmerica Foods, Inc. (the owner was Green River Investors, Ltd.); (2) the gas facility premises lessee (Automatic Gas); (3) the lender (State Bank of Green River); and (4) the 1988 property purchaser (Trans–Western) who, like the first owner, lost the property through foreclosure to the same lender following execution of the 1988 purchase money mortgage.

Initially, Automatic Gas had a prior recorded title interest by virtue of a lease and corollary marketing agreement. The original owner lost its title to the lender by foreclosure of the property who then became owner. As owner, the State Bank of Green River resold the property to the second purchaser and took back a purchase money mortgage.

The issue presented is whether the lender, upon resale and acquisition of the purchase money mortgage, achieved a superior title when Automatic Gas, as lessee, in some fashion subordinated its superior title interest as the lessee in favor of the holder of the purchase money mortgage prior owner—the State Bank of Green River. The subordination is contended to have been accomplished for the benefit of the State Bank of Green River by the second lease agreement which was entered into between Automatic Gas and the new owner who unfortunately did not last long before losing its interest by a second foreclosure of the property by the same lender.

The case simply questions the intent of Automatic Gas to subordinate for the favor of the lender by its agreement with the property purchaser. Intent in one agreement to benefit a third party is presented. The first lease revocation thesis (involving the same parties as a theory normally, *see Van Rensselaer's Heirs*) was applied in trial court decision in first adoption. That revocation thesis, however, derived from *Van Rensselaer's Heirs* has a corollary which denies application to presume intent when it does not make common sense. *Id.* at 342. Overtly here it does not reach the common sense criteria of the presumption *within what is revealed in this record* for the lessee to have intended subordination. There is a chance—one in a hundred or one in a thousand—that for some unwise reason the lender could have intended this now ignoble result.

That is the reason why I suggest that the case be returned for trial to determine the actual facts and not conversely determine the case by summary judgment granted against the State Bank of Green River. However the argument of the majority may now be phrased, this was a decision made by the trial court by applying a presumption of subordination. Common sense invades this question since the only overtly demonstrable benefit favored the third-party lender and provided nothing of justification or benefit to the endangered lessee. *Furthermore, the benefitted party* from the presumption was not the lessor in the original lease and is not the lessor in the second lease. The benefitted party, State Bank of Green River—owner—mortgagee, gains benefit by standing to interject a

favorable presumption into an agreement between two totally different parties. It can be realistically understood that what a lessee may agree to do for or with a new owner does not necessarily establish intent to give title priority to a prior owner who now becomes the holder of a purchase money mortgage. If we seek dual intent, a concept which I reject since only the lessee can intend to surrender its priority leasehold right under the circumstances, the second party to the intent is the new owner and not the State Bank of Green River which was not a bargaining party to the second (or first) leasehold agreement.

I would reverse the summary judgment and let Automatic Gas develop its theory of the case that it did not intend to surrender all leasehold benefits provided in the prior lease which served as its only protection against the prior owner, now mortgagee. This is again a summary disposition where trial determination should have been required for factual issues in order that this summary judgment decision would not stand when based upon pleadings and one affidavit signed by a person without knowledge of the intent of the participants in two other entities in their separate dealings.